The inhabitants of the town of GRISWOLD *against* The inhabitants of the town of NORTH-STONINGTON.

Griswold
v.
N. Stonington.

New-London,
July,
1824.

| 5 | 367 |
| 60 | 169 |
| 5 | 367 |
| 64 | 93 |
| 5 | 367 |
| 71 | 597 |

Select-men are not empowered, *virtute officii*, to submit to arbitrament a question regarding the settlement of a pauper, which involves the right or liability of the town.

By the act of *February*, 1731, providing that any soldier in the continental army, who should be credited to any town in this state as part of its quota, should be considered as a proper inhabitant of such town, such soldier acquired a legal settlement in such town.

Therefore, where an alien enlisted, in 1775, as a soldier in the revolutionary army, and served the *United States*, as a soldier in that army, during the war of the revolution, as one of the quota of the town of *P.* ; it was held, that such soldier thereby acquired a settlement in the town of *P.*, and consequently, the capacity to gain a settlement in any other town, by commorancy.

This was an action of *assumpsit* for the support of *James McDaniels*, a pauper, and *Ruth*, his wife.

The cause was tried at *New-London, October* term, 1823, before *Peters*, J.

*McDaniels* was a native of *Ireland* ; and came into the colony of *Connecticut*, in 1774. In the course of the same year, he married, at *Preston*, his wife *Ruth*, who had a settlement in the colony. In 1775, he enlisted as a soldier in the continental army, and served the *United States*, as a soldier in that army, during the war of the revolution, as one of the quota of the town of *Preston*. During this period, his wife and family resided in, and were partly supported by, that town. In 1787, he, with his wife and family, removed from *Preston* into that part of the town of *Stonington*, which was incorporated, in 1807, by the name of *North-Stonington* ; where he resided, without being warned to depart, and without being chargeable to any town, until 1809, except only an absence of two years from 1794 to 1796.

The defendants gave in evidence a submission of the subject matters of this action, by the select-men of the towns of *Griswold* and *North-Stonington* respectively, without any special authority for that purpose, to the arbitrament of the Hon. *Zephaniah Swift*, and his award thereon in favour of the defendants, which, it was agreed, was to have the same effect as if specially pleaded.

Upon this case the judge directed the jury to return a verdict for the defendants ; which was accordingly done ; and the plaintiffs moved for a new trial, for a misdirection.

Griswold
v.
N. Stonington.

New-London,
July,
1824.

*H. Strong*, in support of the motion, contended, 1. That the plaintiffs were not precluded from a recovery, by the award. In the first place, the select-men have not attempted to bind *the town*, but themselves and their successors in office. Secondly, as select-men, they had not authority to bind the town, by a submission. The statute which creates the office of select-man, and describes the general power belonging to it, does not confer the authority in question. *Stat.* 649. *t t.* 151. *c.* 1. *s.* 3. ed. 1808. Nor is it included in the *special* powers delegated by other statutes. *Stat.* 552. *tit.* 130.—590. *tit.* 143. In *Leavenworth* v. *Kingsbury*, 2 *Day*, 323. it was decided, that select-men could not make an accord regarding the claims of the town. In *Spencer* v. *Overton*, 1 *Day*, 183. it was decided, that they could not make admissions, which would bind the town. See 2 *Day*, 327. They have not power even to commence a suit to recover money expended for the support of paupers ; but the uniform and necessary practice, is, for the town to appoint a special agent for this purpose. If, then, select-men can make no settlement or admission affecting the rights of the town ; and if they cannot even represent the town in the established courts of justice ; can they create a tribunal, and try questions involving the rights of the town before it, upon such terms as they think proper ?

2. That by the declaration of independence, *McDaniels* became a citizen of this state, and had a capacity to acquire a settlement, by commorancy. *Hebron* v. *Colchester*, 5 *Day*, 169.

3. That *Mc Daniels* became an inhabitant of *Preston*, by his serving in the revolutionary army, as one of the quota of that town, pursuant to the act of *February*, 1781. (a)

(a) The act referred to has never been printed. The following is a transscript of it.

" At a General Assembly of the Governour and Company of the State of *Connecticut*, holden at *Hartford*, by special order of his Excellency, the Governour, on *Wednesday*, the 21st day of *February*, *Anno Domini*, 1781.

" Whereas many disputes have arisen, or may arise, between the several towns in this state, relative, to their respective quotas of recruits to fill up the continental army, occasioned, principally, for want of some general leading points being determined, which, if done, would, in a great measure, settle and quiet many, if not all said disputes, that have arisen, or may arise, relative thereto, and greatly expedite the completing this state's quota of the continental army. Wherefore

*Be it enacted, by the Governour and Council, and Representatives, in General Court assembled, and by the authority of the same,* That every apprentice or servant, who hath enlisted, or shall hereafter enlist into the continental army, who was a legal inhabitant of one town, and, at the time of his enlistment, was,

*Goddard*, contra, contended, 1. That the subject matter of the plaintiff's claim had been decided by arbitrament, which was conclusive. The conclusiveness of the award is unquestionable, provided the select-men had power to make the submission, and did make it, in behalf of the town. Here it is not necessary to contend, that select-men have power to submit *all* questions concerning the rights of the town. By law, select-men are *overseers of the poor*, with full power to disburse out of the town treasury what they shall judge meet for their relief, supply and support. *Stat.* 552. *tit.* 130. *s.* 2. ed. 1808. As incidental to these general powers, they must necessarily have the power of deciding what individuals are included in "the poor" of the town. Submission to arbitrament is a reasonable and proper mode of doing this ; nor is any danger to be apprehended from the exercise of such a power. If then, the select-men had the requisite power, the submission made by them as *select-men*, will be considered as made by them *virtute officii*, and will not operate on them *individually*, but upon the inhabitants of the town. *Boston* v. *Brazer*, 11 *Mass. Rep*, 447. 449.

New-London,
July,
1824.

Griswold
*v.*
N. Stonington.

or shall be. a resident as an apprentice, and entered in the militia roll of another town, such soldier shall be reckoned for and credited to the town in which he resides, or shall reside, as an apprentice, and be enrolled as aforesaid.

" *And be it further enacted,* That whenever any person, who was, or is, a legal inhabitant of any town within this state, hath removed, or shall hereafter move, into any other town within the same, and hath been, or shall hereafter be, allowed to reside therein, by virtue of a certificate from the authority and selectmen of the town where he was an inhabitant as aforesaid, therein certifying the same, and being enrolled with the militia of such town where he so resides, and having enlisted, or hereafter enlisting, shall be credited to the town wherein he was or shall be a resident and enrolled as aforesaid, at the time of his enlistment.

" *And be it further enacted,* That every person, who hath enlisted, or shall hereafter enlist, who, at the time of such enlistment, was or shall be a legal inhabitant of any town within this state, and being taxed therein, and hath been, or hereafter shall be, hired in service, and enrolled with the militia of any other town within the same, at the time of such enlistment, such soldier shall be credited to the town where he was or shall be a legal inhabitant, and taxed as aforesaid, upon said town refunding to the town that hired him, the monies advanced as a bounty for his enlisting.

" *And be it further enacted,* That every person, who hath enlisted, or that shall hereafter enlist, who, at the time of such enlistment, was, or shall be, a legal inhabitant of any town within this state, and who, at the time of such enlistment, resided in any other town within the same, and being hired to enlist, by the town wherein he so resides, or hereafter shall reside, such soldier shall be credited to the town where he was, or shall be, a legal inhabitant, upon said town's refunding to the town that hired him, the monies advanced him as a bounty therefor.

New-London,
July,
1824.

Griswold
v.
N. Stonington.

2. That when *McDaniels* came to this country, in 1774, he had not the capacity to gain a settlement here by commorancy ; (*Stat.* 354. ed. 1769. (*b*) and the declaration of independence did not give him a capacity for this purpose.    By the declaration of independence, we did not abrogate our laws ; we only said we would make laws, without His Majesty's leave ; and *Mc Daniels* remained as much a " transient person" after that act, as he was before.    There is nothing in *Hebron* v. *Colchester, 5 Day*, 169. inconsistent with this position.

3. That *McDaniels* was not made a settled inhabitant of *Preston*, by virtue of the act of *February*, 1781.    The sole object of that act was to answer certain exigencies of the time *in relation to the war*.    Its provisions were merely temporary regulations.    This is evident from the nature of the provisions, and from the circumstance that the act was not printed with the permanent statutes.    It was not intended to have any bearing upon the settlement of paupers, or the liability for their support, beyond their term of service.

" *And be it further enacted*, That every free negro and mulatto, having no real estate, shall be credited to the town where he hath been, or hereafter shall be, hired to enlist, unless he is a legal inhabitant of some other town, in which case he shall be credited to the town where he is a proper inhabitant, upon such town's refunding to the town where he is, or shall be hired, the monies advanced him as aforesaid.

" *And be it further enacted*, That all indians, who have enlisted, or hereafter shall enlist, shall be credited to the towns hiring them, unless such indian enlisted upon the continental or state encouragement only, in which case they shall be credited to the town in which they usually reside.

" *And be it further enacted*, That the town to which any soldier in the continental army shall be credited, as part of its quota, shall be liable to, and it shall be the duty of, such town, to provide for the support of such soldier's family, in the same manner as is by law provided in other cases ; and such soldier shall be considered as a proper inhabitant of such town to which he is credited as aforesaid.

" *And be it further enacted*, That every soldier or recruit, that has, or shall be, hired, by any town, or the inhabitants thereof, and it shall appear, by the paragraphs aforesaid in this act contained, that some other town has a right to, and do in fact, challenge such soldier or recruit, as part of their quota, he shall, nevertheless, be credited to the quota of the town that hired him, unless the said town challenging as aforesaid, shall refund back to said town, or the inhabitants thereof, that hired him, the monies advanced him as aforesaid, by the 20th of *April* next.

" *And be it further enacted*, That the several towns, who are deficient, have liberty to fill up and complete their respective quotas, by enlistment and hiring, until the 20th of said *April*, according to the acts and resolves of Assembly in *October* last."

(*b*) Passed *October*, 1770.

HOSMER, Ch. J. The award given in evidence, in this case, unless the general proposition can be supported, that the select-men have unlimited discretionary authority to act in all cases for the town, was unquestionably void. Had they authority, by virtue of which they were empowered to submit the claim on the town to arbitrament? It is not pretended, that they had any special powers to this effect ; and as little reason, is there to affirm, that they had any general authority. The expression, that the select-men are empowered "to take care of and order the prudential affairs of the town," (*Stat. p.* 649. ed. 1808.) from its general and indefinite nature, might occasion doubt and perplexity, if it stood alone ; but it is certain, that is not the sole delegation of power. Many special powers are conferred by the statute on select-men ; and the laws which have been cited, are of this description. For example, they are specially authorized to disburse the money of the town, for the relief of paupers ; (*Stat. p.* 552.) to assess the inhabitants, and issue a warrant for collection ; (*Stat. p.* 590.) and to do many other things specially. Now, why are these special powers given, if they have unlimited authority ? It is an incontrovertible conclusion, that they have not the general authority contended for ; and of this the delegation of special powers, is an infallible proof. Surely, the legislature would not give particular authority, in certain cases, if the power was included in the grant of an unlimited discretion. That the select-men are not authorized to prosecute suits in the name and behalf of the town, is unquestionable ; (*Stat. p.* 188.) and yet it is insisted, that they have power co-extensive with absolute discretion, and may virtually pursue the claims of the town before a tribunal of their own appointment. Undoubtedly, this implies a palpable contradiction ; for the authority to submit, includes the power of suing, and more ; that is, of constituting a judiciary for this purpose. The select-men may give relief to town paupers ; but they cannot make a person a pauper, who in fact is not of this description. If, however, their power of submitting to arbitrament exists, they may do this, and more than this, indirectly. They, at pleasure, may admit inhabitants, without the co-operation of the authority, which the statute requires ; (*Stat. p.* 390.) and subject the town to heavy burdens, and large debts, through the medium of an award. The select-men are the agents of the town, with *special authority,* conferred by various statutes, and defined by usage. They cannot go beyond their special limits, nor assume power which has not

been conferred. All the determinations of our courts rest on this principle. The acknowledgment of select-men that a person is a town pauper, is no evidence against the town. *Spencer* v. *Overton*, 1 *Day*, 183. explained 2 *Day*, 327. Nor can they, by their accord, take away the legal rights of the corporation. *Leavenworth* v. *Kingsbury*, 2 *Day* 323.

The award of the late Ch. J. *Swift* must be put out of the question ; and then it becomes the sole enquiry, whether *McDaniels*, by commorancy, obtained a settlement in *North-Stonington*. Had he the capacity of obtaining a settlement by residence ? If he had, from the length and circumstances of his commorancy, undoubtedly he is an inhabitant of the last mentioned town. There is no question, if *McDaniels* was formerly a legal inhabitant of *Preston*, that he had the capacity of acquiring a settlement by commorancy, in any other town in the state. From the commencement of the revolutionary war, the year after his emigration from *Ireland* to this country, until the close of it, he served in the *American* army for *Preston*, as one of her quota. By the act of the General Assembly, passed on the 21st day of *February*, 1781, his services as a soldier made him an inhabitant of *Preston*. That law enacted, " That the town to which any soldier in the continental army shall be credited, as part of its quota, shall be liable to, and it shall be the duty of such town to provide for, the support of such soldier's families, in the same manner, as is by law provided in other cases ; *and such soldier shall be considered as a proper inhabitant of such town, to which he is credited as aforesaid.*" Of *Preston*, then, *McDaniels* was *a proper inhabitant.* If the plain words of a law were the interpreters of its meaning, one would think, that no room was left for criticism or controversy. Had the law only affirmed, that " such soldier should be considered *as an inhabitant* of such town to which he is credited as aforesaid," there could exist no reasonable doubt, that legal inhabitancy was intended. From a solicitude to exclude all controversy on this subject, the legislature prefixed the emphatical word "*proper*," to the term " *inhabitant*," thereby denoting that the persons spoken of, *properly* and *peculiarly* belonged to the towns for which they had enlisted.

But the plain meaning of a term resulting from etymology and the universal usage of speech, has been controverted ; and a limitation has been attempted to be put on one of the clearest expressions of which the *English* language is susceptible. It has been said, that it was only the intention of the legislature

to render a person an inhabitant, and his family capable of supplies, during the period of his service for the town; but this supposed intention is not merely opposed to the words of the law, the great criterion of intention, but to the nature of the subject matter. Of this restricted inhabitancy there is no example. Once an inhabitant, and the person remains such, until he has acquired a new settlement in a different town. In addition to considerations, which to me appear to be conclusive, one is furnished from the object of the act in question. From the preamble it appears to have been made to settle controversies, by the promulgation of certain plain rules or prescriptions, and to facilitate the completion of the state's quota, for the continental army. Like an explanatory statute, it must be interpreted by an entire regard to the popular meaning of its expressions. Another weighty consideration is derived from the signification of the word *proper*, appearing from one of the sections of the act. In relation to free negroes and mulattoes, who were enlisted soldiers, certain provisions are made; and the terms *legal* and *proper* are both used synonymously. The legislature then, virtually, has defined the word, in question. The law, in its reason and spirit, intended to give a permanent inhabitancy to those, in whatever country they were born, who were fighting the battles of independence; and in the same liberality of mind and glow of feeling, it has been held, that the military service of an enlisted slave, broke the shackles of his servitude, and gave him emancipation.

I entertain no doubt, that *McDaniels* became an inhabitant of *Preston*, by his serving in the revolutionary army, as one of their quota; and that afterwards, by commorancy, he became settled in *North-Stonington*.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial to be granted.