A. P. MITCHELL AND VERNON MITCHELL

*vs.*

INHABITANTS OF LINNEUS.

Aroostook.    Opinion November 30, 1911.

*Towns.    Arbitration and Award.    Selectmen.    Authority to Arbitrate.*

While the selectmen of a town cannot delegate their authority to determine the question of damages caused by taking land for a road, they may arbitrate a claim for such damages after they have assessed them.

Where the selectmen of a town laid out a way and assessed the damages therefor, and the land owner appealed from the assessment of damages, and afterwards the matter was submitted to arbitration but only one of the selectmen signed the agreement to arbitrate, *held* that the evidence sufficiently showed that the selectman who signed the agreement to arbitrate was authorized so to do and that the town was bound by the decision of the arbitrators.

On report.    Judgment for plaintiffs.

Action of debt upon an award of referees.    Plea, the general issue.    At the conclusion of the evidence, the case was reported to the Law Court with the stipulation that "upon so much of the evidence as is admissible the Law Court is to enter such judgment as the legal rights of the parties require."

The case is stated in the opinion.

*Madigan & Madigan, and Leonard A. Pierce,* for plaintiffs.

*Hersey & Barnes,* for defendants.

SITTING : WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

HALEY, J.　This is an action of debt upon an award of referees. The case is before the court upon report.

In 1910, the selectmen of the town of Linneus laid out a way in that town, in part over land of A. P. Mitchell, and land of Vernon Mitchell a son of A. P. Mitchell. They made their return to the town and the way, at a town meeting legally called, was duly accepted. They awarded to A. P. Mitchell $100 for damages sustained by him, but made no award for damages sustained by Vernon Mitchell. A. P. Mitchell being dissatisfied with the amount of the damages awarded him, seasonably took an appeal from the award to the Supreme Judicial Court, and the appeal is now pending awaiting the decision in this case.

In August, 1910, there were negotiations between the selectmen of the defendant town, James H. Ruth, Colby Estabrook and Byron R. Stewart, and A. P. Mitchell in reference to settling the claim, or claims, for damages by arbitration, and papers were prepared to submit the question of damages to referees. The papers, or some of them, were signed by two of the selectmen and by A. P. Mitchell, and were afterwards destroyed.

It is claimed by the plaintiffs that the claims of both A. P. Mitchell and Vernon Mitchell were to be submitted, and that the submission was signed by two of the three selectmen of defendant town. It is claimed by the defendant town that it was the intention to submit only the claim of Vernon Mitchell for damages ; that after the papers were signed by the selectmen, A. P. Mitchell signed for Vernon, and that they then discovered that Vernon was more than twenty-one years of age, and the selectmen refused to admit the authority of A. P. Mitchell to sign for him, and, as they could not obtain his signature, the attempt to arbitrate was abandoned. The

following day Mr. Ruth, one of the selectmen and the town agent of the defendant town, met A. P. Mitchell and made an agreement to refer both claims to referees named in the agreement to refer the claims, with the further agreement between them, and the referees, that the award should not be made public until Vernon's return, which was to be in about ten days, and that if he would then agree to be bound by the award and would sign the submission to the referees, they should file their award.

The referees then viewed the way as laid out, upon which the town was then working, in company with A. P. Mitchell and selectman Ruth. Upon Vernon's return he was informed of the proceedings, and signed the agreement to submit the claims to arbitration, which is set forth below.

The referees then made public their award, in which they allowed the plaintiffs the sum of $375.

The agreement to arbitrate was as follows:

"Linneus, Me., August 25, 1910.

We, the undersigned, James H. Ruth, in behalf of the town of Linneus, and A. P. Mitchell and Vernon Mitchell, owners of land across which road to avoid Coyle Hill, so called, has been located, do subscribe to the following agreement: —

We are willing to abide by the decision of Matthew Wilson of Houlton and John W. Davidson of Hammond Plantation, as to what damages shall be paid by the town of Linneus to said A. P. Mitchell and Vernon Mitchell for the right of way for said road located by said town of Linneus.

J. H. RUTH for the Town of Linneus.

his mark
A. P. MITCHELL          X
M. WILSON

VERNON MITCHELL."

This action is brought upon the award, and the defense is:

First. That the selectmen had no authority to arbitrate the claim for damages.

Second. That Mr. Ruth, who signed the submission for arbitration, was not authorized to do so, and that his action has never been ratified by the town, or by either of the other two selectmen.

It is undoubtedly true, as claimed by the defendant town, that it is the duty of the selectmen to lay out ways in their town and to assess the damages caused thereby and report their doings to the town. While so engaged they are acting as a court, and they cannot delegate their authority or refer the question of damages for the land taken. Being the court created by law to pass upon the question in the first instance, they cannot avoid their responsibility by referring the question to others.

In this case the municipal officers did assess the damages sustained by A. P. Mitchell in the laying out of the way. They assessed no damages for Vernon Mitchell, over whose land the way as laid out also passed. This was, in fact, as though they had reported that no damages had been sustained by him, and the duty of the court was ended when it made its report and filed it as required by law, and Vernon Mitchell had his right of appeal on the question of damages, as he would have had if an award had been made and he was dissatisfied therewith. *Wilson* v. *Simmons*, 89 Maine, 242, and cases cited.

The duties of the selectmen, as a court, as far as the way in question was concerned, ended when their report was filed in the town clerk's office; but their duties as selectmen of the town, were not ended; as selectmen, they still had charge of its business which included the adjustment and payment of all just claims against the town.

At the time of the reference the appeal of A. P. Mitchell was pending in the Supreme Judicial Court, and it was their duty to protect the interest of the town in that appeal. If Vernon Mitchell had a claim for damages for the taking of his land, or thought he had such a claim, it was their duty to protect the interest of the town in the adjustment of that claim. That being their duty, they had the right to employ counsel to assist them and contest the claim in court. Having the right to settle and adjust, they had the power to do whatever was necessary to settle and adjust, which

included the right to submit to arbitration.    As said by the court in *Hallister* v. *Pawlet*, 43 Vt. 425, "The right to settle and adjust includes the right to submit the subject matter in dispute to arbitration.    An arbitration is one of the usual ways of settling a disputed claim ; and the selectmen had the right to settle and adjust this claim in any of the usual and ordinary modes of settling and adjusting such claims."

The same rule was recognized in *Fogg* v. *Dummer*, 58 N. H. 505, which was an action on an award where the selectmen had submitted to arbitration, and in which the court say :    "It was their duty, as agents, to investigate the plaintiff's claim, and, in the absence of special instructions by the town, they had the power to submit the merits of the claim to arbitration.

*Hine* v. *Stevens*, 33 Conn. 497, which overruled *Griswold* v. *North Stonington*, 5 Conn. 367, was an action upon an award, and the court held that the selectmen had authority to submit to arbitration, saying :    "The avoiding of a lawsuit by a reference and thereby escaping the delay, the expense and the risk of a jury trial, is in most cases eminently judicious."

And in *City of Somerville* v. *Charles H. Dickerman*, 127 Mass. 272, the court held that the city had no right to submit the assessment of betterments to arbitration, but stated in regard to the power to submit to arbitration the question of damages sustained by the land owner :    "In such a case, the controversy or question is between the town and land owner separately, as to the damage he has sustained by the taking of his land ; it concerns no one else, it may well be and often is settled by agreement, but it would seem that it might be referred to arbitrators as a convenient mode of settlement without affecting the rights of others or violating any principle of public policy," citing three cases as authority.

Having the right to submit to arbitration, the only remaining question is, was Mr. Ruth, who signed this submission to arbitrate, authorized to do so, or was his action ever ratified by the other selectmen ?

Mr. Ruth denies his authority ; Mr. Estabrook and Mr. Stewart, the other selectmen, also deny it.    The plaintiffs rely upon the

declarations and acts of the selectmen to overcome the testimony of
the three selectmen. It is undisputed that Mr. Ruth, at the time
the papers were signed, was asked if he had authority to sign for
the town, and he replied that he had. The writing itself shows
that he claimed that authority. The day before the papers were
signed, other papers were signed to refer the same matters to arbitra-
tion, which was abandoned because no one had authority to sign
Vernon Mitchell's name. Those papers were signed by a majority
of the selectmen. It is argued that the first paper contemplated
only the arbitration of Vernon's claim, but Mr. Ruth testified that
it was understood, if the father had authority to sign for Vernon,
both claims were to be submitted to arbitration, and Mr. Stewart
testified that it was understood that they were going to submit the
damages for laying out the whole road to arbitration, and he drew
the papers for submission to arbitration, and the plaintiff A. P.
Mitchell testified that both claims were to be submitted. The evi-
dence fairly shows that the day before the submission acted upon
was made, the defendant town, by a majority of its selectmen,
agreed to submit to arbitration the claims of both plaintiffs, and
that the question of A. P. Mitchell's authority to sign for Vernon
was raised, and the matter was left incomplete until that difficulty
was removed; that the next day the arrangements were made to have
the referees go upon the premises and make their award, seal it,
and when Vernon returned, if he would sign the submission, the
referees were to make their award public. All this was done, and
when the award was made public the selectmen of the defendant
town were dissatisfied, and denied the authority of Mr. Ruth.

The selectmen sent two people to get A. P. Mitchell to arbitrate.
Colby Estabrook, the day before the arbitration, was on the road
and stated that he thought that a fair way to settle it, and the day
of the arbitration, Mr. Stewart, who drew up the first papers, was
out to the road where the men were working. The award was
kept sealed, its contents unknown until Vernon returned, ten days
later. In a small town, like that of the defendants, the fact of arbi-
tration must have been known. No selectman protested, or denied
that the claim had been submitted to arbitration. When the award

MITCHELL *v.* LINNEUS.

was made public, Mr. Ruth at once drove to the home of the select-man Stewart and instructed him not to sign any papers in the Mitchell matter, and informed him that the referees had allowed $375, and that they would not pay it. No question was asked by Mr. Stewart of how it came to be referred, when, or by whom, and no denial was made that it was done with authority.

Mr. Ruth fairly states the position of the selectmen when he answers the following questions :

"Q.   If the award brought in by these men had been less than $100, you would have stayed by it, wouldn't you?   I am speaking of you.

A.   If it had been anywheres near reasonable at all I would have stayed by it.

Q.   But, when you found that it was more than you thought it ought to be, then you refused to pay it, did you?

"A.   I did."

In substance, the position of the selectmen is, they would hold the plaintiffs to the agreement, if satisfied with the award.   If not satisfied with it, they would deny their authority and repudiate it.

The facts, circumstances and conduct of the interested parties, as they appear in the case, carry the conviction that the selectmen knew of the arbitration and consented, and that, if the award had been satisfactory to them, they would not have denied the authority of Mr. Ruth.   The parties, having chosen the tribunal in which to litigate their differences, are bound by the decision of that court.

*Judgment for plaintiffs for $375, and interest from the date of the writ.*