GEORGE HINE AND ANOTHER *vs.* HIEL S. STEPHENS, TREASURER, AND THE TOWN OF NAUGATUCK.

The court incline to the opinion that the selectmen of a town have power, without special authority from the town, to submit to arbitration a claim against the town for damages.

An injunction ought not to be granted except for the prevention of great and irreparable mischief.   It cannot be demanded as a matter of right; but the granting of it must always rest in the sound discretion of the court.

Equitable considerations stated why the court would have refused to grant an injunction in the present case, even if they had regarded the award as invalid.

PETITION, brought to the superior court for New Haven county, praying for an injunction against the payment, by the respondent Stephens, treasurer of the·town of Naugatuck, or by the town itself, which was also a respondent, of an award of $1,425 made by arbitrators against the town, in favor of one Philo Beecher, for an injury received by him by means of the defective condition of a highway in the town.

The case was tried before *Pardee J.*, who found the following facts :—

At a town meeting of the town of Naugatuck, held on the 26th day of August, 1864, the warning for which contained no notice that any such matter was to be acted upon, the following vote was passed :—" Voted, that the selectmen be in-

structed to settle with the person lately injured, in conse-
quence of a defect in the dug road, on such terms as they
shall deem to be for the best interest of the town."

Philo Beecher was the person intended by the vote.  David
Smith, named in the petition as one of the selectmen who
signed the submission on the part of the town, at the time of
the alleged injuries to said Beecher, and at the time of the sign-
ing of the submission to arbitration, was, and from that time
hitherto has been, the first selectman of the town of Nauga-
tuck, and during all that period was the legally elected and
qualified agent of the town.  He was present at the trial
before the arbitrators, consenting thereto, with Stephen C.
Warner, the other selectman of said town, under a submission
signed by them and by Philo Beecher, submitting the claim
of the latter upon the town for damages to arbitrators.  An
award was made in favor of said Beecher for $1,425.  George
Hine, one of the two petitioners, gave his bond as surety for the
town to abide the award, and was present at the trial before
the arbitrators, and made no objection thereto, but acted on
the trial as counsel for the town.

Upon these facts the respondents claimed the law to be so
that the petition should be dismissed with costs ; but the
court overruled the claim and granted the prayer of the peti-
tion, and decreed that a perpetual injunction should issue.
The respondents moved for a new trial.

*H. B. Munson* and *H. Stoddard* in support of the motion.
1.    The selectmen had authority to submit the question to
arbitration.  See Stat. (Comp. 1854) p. 162, sec. 27.    It is
there provided that "it shall be the duty of the selectmen to
superintend the concerns of the town, and to adjust and settle
all accounts against the same."  *Boston* v. *Brazer*, 11 Mass.,
447 ; *Buckland* v. *Conway*, 16 id., 396 ; *Schoff* v. *Bloomfield*,
8 Verm., 472 ; *Dix* v. *Dummerston*, 19 id., 266.    See also
General Statutes, Rev. of 1866, p. 104, sec. 45.    The term
" accounts " in the former statute means " any claim or
demand " which it is the duty of the town to pay, whether
book account, note or damages.    The new statute does

not alter its sense. See p. 515, sec. 4, where the language conferring powers upon conservators is the same, and a conservator can make a lawful submission. *Hutchins* v. *Johnson*, 12 Conn., 376. And so in analogous cases. An administrator may submit. *Alling* v. *Munson*, 2 Conn., 696. So may a guardian. *Weed* v. *Ellis*, 3 Caines, 253 ; *Hutchins* v. *Johnson*, 12 Conn., 381. An attorney at law as such has power to make a lawful submission. *Somers* v. *Balabrega*, 1 Dallas, 164 ; *Holker* v. *Parker*, 7 Cranch, 436. The matter in controversy was one of the concerns of the town, and it was for the interest of the town to have the controversy settled. If Beecher was injured by reason of a defect in the highway it was the duty of the town to pay him, and that claim or account against the town it was the duty of the selectmen to adjust and settle. *Griswold* v. *North Stonington*, 5 Conn., 367, was upon the construction of a different statute, and the reasons which support it have all been undermined by subsequent decisions. *Union* v. *Crawford*, 19 Conn., 331 ; *Burlington* v. *New Haven and Northampton Co.*, 26 id., 51 ; *Sharon* v. *Salisbury*, 29 id., 113.

2. A settlement by arbitration was a reasonable and proper method of settlement. *Condon* v. *South Side R. R. Co.*, 14 Gratt., 302. The action of the referees and the action of the selectmen stand unimpeached. The town as a town does not complain of it, but impliedly sanctions it by defending this suit.

3. One of the petitioners advised and acquiesced in the very act he complains of. He is not in a position to complain in equity of an act which he advised.

4. The action of the selectmen was authorized by a previous vote of the town. This vote was legal ; it was business proper to be done at any town meeting. At all events a court of equity will not interfere on account of a mere technical defect, when no injustice is either alleged or proved, against a settlement of a controversy which ought to be settled. *Whittlesey* v. *Hartford, Providence and Fishkill R. R. Co.*, 23 Conn., 421.

5. The submission and award binds Beecher. Why should

it not bind the town ?   The town would be estopped from denying the validity of the award by its acquiscence or non-dissent, even if it were disposed to do so.   *White* v. *Fox*, 29 Conn., 570 ; *Fryeburg Canal Co.* v. *Frye*, 5 Greenl., 38.

*Beach* and *Webster*, with whom was *Hine*, contra.

1.   Selectmen have no power, by virtue of their official position, to submit to arbitration a claim against the town for unliquidated damages.   1st. They are not clothed with the general powers of the corporate body for which they act. They are special agents, and can only exercise such powers and perform such duties as are necessarily and properly incident to the special and limited authority conferred upon them. *Smith* v. *Cheshire*, 13 Gray, 318 ; *Opinion of the Judges*, 25 Maine, 569.   2d.   The power claimed must be found, if at all, in the clause imposing on them the duty " to superintend the concerns of the town, and adjust and settle all accounts against the same, and draw orders on the treasury for their payment."   Statutes (Comp. 1854) p. 162, sec. 27.   The duty here imposed is that of a qualified superintendence, and does not involve the unlimited power to manage, control and bind the town in all its concerns.   The existence of such a power cannot be reconciled with the necessity which the legislature has from time to time recognized of granting special powers to the selectmen, enabling them to make contracts for the support of paupers, issuing licences, etc., and the omission of the right to submit to arbitration, from the special powers granted, is conclusive evidence that the legislature did not intend to confer it.   3d.   The selectmen themselves had no power, under the duty " to settle and adjust accounts," to adjudicate upon this claim for unliquidated damages for injuries resulting from the assumed negligence of the town.   The questions arising between such a claimant and the town differ widely from those involved in adjusting the price of a pauper's board, or other mere. matters of account.   The selectmen are not the proper tribunal for such an issue, involving, as it must, the question of the discharge of their own duties as the officers and agents of the town.

Hine *v.* Stephens.

And the ineffectual attempt of the town meeting to confer the power, recognizes that both the town and the selectmen regarded a special authority requisite for the purpose. 4th. If the selectmen had the power to adjudicate upon this claim they could not delegate or transfer it to others. They are public agents, selected as able and discreet persons, in whose judgment confidence is reposed. They are bound by their oath of office to exercise that discretion and judgment in behalf of the town. Such a trust must adhere in the agent to whom it is confided, and cannot be delegated.

2. In the other New England states where the office of selectmen is recognized, though it is believed that this precise question has not been settled, the tendency of judicial decisions has been to restrict, rather than by implication to enlarge their powers. Thus it is held in Massachusetts that they have no power, by virtue of their office, to make a contract in behalf of the town for the hiring of a building for the purpose of holding their town meetings. *Goff* v. *Rehoboth,* 12 Met., 26. Nor to offer rewards for the apprehension of persons suspected of crime. *Day* v. *Otis,* 8 Allen, 417. And in New Hampshire it is held that there is nothing in the statutes, or in the nature of their authority, or in the reason of the matter, which can enable them to bind their town to maintain a pauper with whose support it is not legally chargable. *Peterborough* v. *Lancaster,* 14 N. Hamp., 390. Nor can they, without consideration, release a cause of action in favor of the town to qualify a witness to testify. *Carlton* v. *Bath,* 2 Fost., 559.

3. In Connecticut this precise question has been settled in *Griswold* v. *North Stonington,* 5 Conn., 367. A unanimous court, by Hosmer, C. J., decided that "selectmen are not empowered *virtute officii* to submit to arbitration a question regarding the settlement of a pauper, which involves the right or liability of the town." The authority of this case was not touched, much less overruled, by *Union* v. *Crawford,* 19 Conn., 331. That was an action of assumpsit, involving the liability of the town for a coffin furnished for a dead pauper, in which the court were "inclined to think, though not without some

hesitation," that the selectmen might appear and defend in behalf of the town ; but *Griswold* v. *North Stonington*, though cited by counsel, is not referred to in the opinion of the court. Any implied intention to affect any prior decision upon the powers of these officers is in terms excluded by the court. They say : " But whatever may have been formerly decided by the superior court, it does not appear that any such decision, (that is, as to the inability of selectmen to defend suits against the town,) has received the sanction of this court, and we are therefore at liberty to dispose of the question on principle." And the legislature has made no subsequent enactment granting the power denied by the court in *Griswold* v. *North Stonington*. It is said that " to superintend the concerns of the town" involves more extended powers than " to take care of and order the prudential affairs of the town." The difference is not very obvious, but the denial of power by the court was not because the language of the then statute was not " general and indefinite enough if it stood alone" to include the claimed power, but was put on the distinct ground that this was not " the sole delegation of power;" that " many special powers are conferred by statute on the selectmen, and that surely the legislature would not give particular authority in certain cases, if the power was included in the grant of an unlimited discretion." It cannot be imputed to the legislature, in view of this judicial denial of power to the selectmen to submit a claim against their town to arbitration, and especially in view of the reasons given for such judicial denial, that it intended to confer such denied power by this mere change of phraseology as to the general powers of these officers.

McCurdy, J. Philo Beecher claimed to have received certain injuries to his person and property through the defective condition of a road which it was the duty of the town of Naugatuck to keep in repair, and demanded a large sum in damages. The selectmen disputed the liability of the town. The town at a meeting, when the subject had not been mentioned in the warning, voted that the selectmen should be

instructed to settle with him on such terms as they should deem to be for the best interest of the town. The selectmen submitted the matter in dispute to arbitrators, who awarded in his favor. The petitioner Hine consented to the reference, gave bonds for the town, and acted as its counsel on the trial. There is no averment in the petition and it is no where intimated that the demand was unjust, or that the conduct of the parties or arbitrators was unfair, or that the damages are excessive. It appears either directly or by inference that the selectmen and treasurer and the town itself acquiesce in the result and will pay the award unless restrained.

The ground of this application is that the selectmen had no power to make the submission. In the case of *Griswold* v. *North Stonington*, 5 Conn., 367, it was held that selectmen had no such authority. It is well known that the court which made that decision were emphatically strict constructionists in relation to the power conferred by statute upon public officers, and somewhat more liberal views on the subject have since been entertained. Chief Justice Hosmer, in giving the opinion, relies very much upon the precise language of the statute then existing as defining and limiting their power. A very prominent reason which he gives in support of the decision is, that " the selectmen are not authorized to prosecute suits in the name and behalf of the town."

But in contradiction of this it was held in the case of *Union* v. *Crawford*, 19 Conn., 331, that " the selectmen of a town, by virtue of their general powers as selectmen and without the delegation of any special authority for the purpose, have a right to prosecute and defend suits to which their town is a party." Judge Waite says that the statute provides that " it shall be their duty to superintend the concerns of the town, adjust and settle all accounts against the same," &c. " Now if a suit in which the town is a party is one of the concerns of that town it falls literally under the superintendence of the selectmen. They alone have power to settle and adjust the matter in controversy." " The selectmen in superintending the concerns of the town, in settling and adjusting claims and in drawing orders for payment, act but as agents

of the town." He lays much stress upon the change between the terms of the statute as it formerly existed and as it stood after the revision. He says, "Then they were appointed to take care of and order the prudential affairs of their towns. The statute as revised in 1821 makes it their duty to super-intend the concerns of the town, thus conferring upon them powers in very general and comprehensive terms."

Although in that case the suit was for supplies to a pauper, the principle was laid down generally as to the powers of selectmen to settle and adjust matters in controversy. The court say, "When we consider the many suits to which a town is exposed in relation to *its bridges*, *its highways* and *its paupers*, it can hardly be supposed that the legislature should have intended to leave them without agents at all times empowered to defend their rights." The power to settle in a *highway matter* is placed upon the same footing as in a *pauper case*.

It is however said that this authority of the selectmen is a personal trust which they cannot delegate to others. But if they have this power to settle the mode may be discretion-ary, and taking the opinion of men who are presumed to be intelligent and impartial as the basis of their action is only a mode of settling and adjusting a claim. They adopt the de-cision as their own judgment and the terms become theirs.

There is no more danger to the town from their submitting a matter to arbitration than from their exercise of any other power. The avoiding of a lawsuit by a reference, and thereby escaping the delay, the expense and the risk of a jury trial, is in most cases eminently judicious. The trust is no more personal than that of an administrator, a conservator or a guardian, yet all these officers may submit matters within their charge to arbitration. *Alling* v. *Munson*, 2 Conn., 691, 696; *Hutchins* v. *Johnson*, 12 id., 376; *Weed* v. *Ellis*, 3 Caines, 253.

For these reasons we incline to the opinion that selectmen have the authority in question.

But there is another ground upon which we think this pe-tition should be dismissed. The remedy by injunction is

"summary, peculiar and extraordinary." An injunction "ought not to be issued except for the prevention of great and irreparable mischief." It "is not *ex debito justiciæ* for any injury threatened or done to the estate or rights of a person, but the granting of it must always rest in sound discretion governed by the nature of the case." *Enfield Toll Bridge Co.* v. *Connecticut River Co.*, 7 Conn., 50 ; *Bigelow* v. *Hartford Bridge Co.*, 14 id., 565 ; *Whittlesey* v. *Hartford, Providence and Fishkill R. R. Co.*, 23 id., 421.

It does not appear that there has been any wrong or injury to the town. But an injunction would be productive of great hardship and injustice to the party in whose favor the award was made. He has acted in good faith and would be estopped by the award. He cannot be restored to his position before the reference. No proposition is made to refund his expenses, and he would be unable to recover them. His testimony may be lost. The town has taken its chance of a decision in its favor. It does not now oppose the result. Two individuals (one of whom at least should be estopped) resist upon the ground that paying the sum awarded would increase their taxes. What would be the amount of the increase is not apparent, but it is safe to suppose that the injury would not come under the head of "great and irreparable."

Under these circumstances it can hardly be expected that a court of equity should interfere in a matter which is substantially adjusted and plunge the town into a lawsuit.

We think there is manifest error in the judgment of the superior court.

In this opinion the other judges concurred.