ROGER G. PYTKO *v.* STATE OF CONNECTICUT

SUPERIOR COURT          HARTFORD COUNTY          FILE NO. 157172

Memorandum filed March 6, 1969

*Michelson & Kane,* of Hartford, for the plaintiff.

*Robert K. Killian,* attorney general, and *Frederick D. Neusner,* assistant attorney general, for the state.

*Cooney & Scully,* of Hartford, for the third-party defendant Vincent G. Kling.

RUBINOW, J.   On February 1, 1965, the state of Connecticut entered into a contract for architectural services with Vincent G. Kling.   The contract was executed for the state by Homer D. Babbidge, Jr., president of the University of Connecticut, acting under the authority of § 13 of No. 362 of the 1963 Special Acts.   31 Spec. Laws 365.   That section gave the trustees of the University of Connecticut

"full and complete responsibility for the expenditures of and accounting for funds realized from bonds issued . . . for the medical-dental school." The special act also directed that the trustees "shall select architects . . . for said medical-dental school, in such manner as they deem best to ensure (1) design of the entire project as a credit to Connecticut architecturally, and (2) economical construction and maintenance." In addition to Babbidge's signature, the contract bears the signed endorsements, "Approved as to form, Harold M. Mulvey Attorney General" and "Approved by George J. Conkling, Commissioner of Finance and Control."

An action having been instituted against the state by the contractor which is doing the construction work under Kling's plans, the state brought a third-party action against Kling. Kling then filed a motion to stay the third-party action, under General Statutes § 52-409, which provides for a stay until there has been arbitration in accordance with an agreement to arbitrate. Such an agreement is contained in article 12 of the contract between Kling and the state. The state has opposed the motion, substantially on the ground that the trustees do not have the power to enter into an agreement to arbitrate.

The crucial question is whether a governmental agency has the power to enter into an agreement to arbitrate if such power is not expressly conferred on it by statute. On this question, there are divergent lines of authority. One line, exemplified by *United States* v. *Ames,* 24 Fed. Cas. 784, holds that no officer of the government has the power to enter into an agreement to arbitrate unless that power is specifically conferred by the legislature. The other line, exemplified by *Commonwealth* v. *Eastern Paving Co.,* 288 Pa. 571, holds that power to enter into

an agreement to arbitrate may be implied from duties imposed on a governmental officer. In that case, the highway commissioner had the duty of "constructing, maintaining, and improving . . . highways, according to specifications." The court held that these and related statutory provisions gave him implied authority to enter into an arbitration agreement. The court said further that the state may properly become a party to a compulsory arbitration agreement "[u]nless restrained by some positive enactment." Id., 576.

The rationale in the *Ames* case has been criticized as "puzzling and inconclusive." Comment, 50 Yale L.J. 458, 462. Decided in 1845, it has an antiarbitration philosophy which was repudiated in this state twenty-one years later in *Hine* v. *Stephens,* 33 Conn. 497. In that case, the selectmen were authorized at a town meeting (p. 498) "to settle with the person lately injured, in consequence of a defect in the dug road." This authorization was defective because no notice of it was given in the call of the meeting. The selectmen, nevertheless, submitted the matter to arbitration. The court, although deciding the case on procedural grounds, "incline[d] to the opinion" (p. 504) that no special authority to agree to arbitration was necessary and that the power to make such an agreement could be implied from the selectmen's "duty to superintend the concerns of the town, adjust and settle all accounts against the same." Id., 503. The following additional comment of the court seems quite relevant today (p. 504) : "There is no more danger to the town from their submitting a matter to arbitration than from their exercise of any other power. The avoiding of a lawsuit by a reference, and thereby escaping the delay, the expense and the risk of a jury trial, is in most cases eminently judicious. The trust is no more personal than that of an administrator, a conservator or a guard-

ian, yet all these officers may submit matters within their charge to arbitration." In *Mallory* v. *Huntington,* 64 Conn. 88, 96, the court followed the dictum in the *Hine* case, saying: "We think the opinion expressed in *Hine* v. *Stephens* is correct . . . . In making such a submission the selectmen do not exceed the authority given them by statute."

Although the *Hine* case deals with the submission of an existing controversy, as contrasted with an agreement to submit a future controversy to arbitration, that distinction has not been of significance in this state since 1929, when our Arbitration Act was passed. That act furthers a long-standing public policy of this state favoring arbitration. *Gaer Bros., Inc.* v. *Mott,* 144 Conn. 303, 307. "Arbitration . . . in a proper case 'deserves the enthusiastic support of the courts.'" *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269, 279 (quoting *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 69). Our public policy favoring arbitration would be frustrated by the rule in the *Ames* case and advanced by the rule in the *Eastern Paving Co.* case, and the court accordingly will follow the "implied authority" rule of the latter case.

There remains the question whether the authority of the trustees to enter into an agreement to arbitrate may be implied from § 13 of the special act. As noted previously, that section vests in the trustees "full and complete responsibility for the expenditures of . . . funds realized from bonds . . . for the medical-dental school." 31 Spec. Laws 365 § 13. Further, it empowers the trustees to select the architect "in such manner as they deem best." The trustees, by agreeing to article 12 of the contract, have "deemed it best" that the contract for architectural services should include a provision for arbitration. In view of the policy of our state

favoring arbitration, and in the absence of any general or special act restraining the trustees from entering into an arbitration agreement, the court holds that the broad powers given to the trustees include the power to enter into an arbitration agreement.

The state claims that General Statutes §§ 3-7 and 4-61 prevent the court from implying the existence of such a power in the trustees. The court does not so read these statutes. The former goes no further than to specify the procedure for compromising claims by or against the state. There is no express or implied direction that the state may not agree to arbitrate if it cannot compromise. Section 4-61 authorizes suits against the state, but there is no express or implied direction that the parties may not agree to arbitrate as an alternative to proceeding by suit. Further, § 4-61 applies only to contracts with the highway department and the public works department.

The third-party defendant's motion for a stay is granted.