CITY OF HARTFORD *v.* AMERICAN ARBITRATION ASSOCIATION ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 9, 1977—decision released March 21, 1978

*Thomas F. Parker,* with whom, on the brief, was *William A. Taylor,* for the appellant-appellee (plaintiff).

*John J. Reid,* for the appellee-appellant (defendant Gilbane Building Company).

SPEZIALE, J.  The plaintiff, the city of Hartford, brought this action for injunctive relief, seeking to restrain the defendants, the American Arbitration Association, the three appointed arbitrators individually, and the Gilbane Building Company (hereinafter Gilbane), from proceeding with arbitration to settle claims arising from a contract for construction of the Hartford civic center.  The city has appealed from the judgment of the trial court denying injunctive relief.  Gilbane has cross appealed, claiming error in the court's conclusion that the Hartford city manager lacked authority to bind the city to the arbitration provisions in the construction contract executed between the city and Gilbane.

The city and Gilbane have stipulated to most of the underlying facts from which the dispute arose.  The crux of the dispute is whether the provisions for arbitration in the contract between the city and Gilbane are binding on the city.

In 1970, the city of Hartford, having taken the preliminary steps necessary to initiate construction of a civic center, hired a firm of Philadelphia architects to design and oversee the project. These architects prepared the bid documents, including the contract which was to be executed by the city and the contractor who would be selected as the general contractor. The contract contained provisions for arbitration of claims and disputes. The contract containing these provisions was made available to bidders at the time of the invitation to bid. Bids were received from several contractors, and, after a review of the bids by various city agencies involved in the project, it was recommended that Gilbane's bid be accepted. On January 22, 1972, the city manager, on behalf of the city, and Gilbane executed the contract. The procedures followed in the preparation and award of the contract were those normally used by the city's administrative officers. The city of Hartford had authority to enter into the contract, and the city manager, as chief executive officer of the city, was a proper person to sign the contract on behalf of the city.

Construction of the project began in the spring of 1972 and it was largely completed by the end of 1974. In March, 1975, Gilbane filed a demand for arbitration with the American Arbitration Association.[1] At that time the civic center was substantially completed and the city had accepted the project for occupancy and use. As of February 10, 1976, the arbitration panel had been selected and notices of the first hearing date of March 8, 1976, had been forwarded to the parties by the American Arbi-

---

[1] The amount of damages sought was not disclosed at that time, but since then Gilbane has indicated that its claim totaled somewhere between $6,000,000 to $7,000,000.

tration Association. On February 27, 1976, the city for the first time informed Gilbane of its position that the arbitration was unauthorized. The city based its claim on the fact that the court of common council, the city body which has authority to institute actions or compromise claims, had never agreed to or approved the arbitration provisions in the contract.

On March 23, 1976, the city filed an action seeking a temporary and permanent injunction restraining the defendants from proceeding with arbitration. The city and Gilbane stipulated to four issues which were to be determined by the court: (1) whether specific approval or at least specific authorization by the court of common council is required before the city can enter a binding agreement to arbitrate; (2) whether the city had, by its actions, ratified the arbitration provisions; (3) whether the city was estopped from denying the validity of the arbitration provisions; and (4) whether the city was barred by laches from asserting the validity of the arbitration provisions.

The court concluded that the court of common council had not delegated its authority to institute actions or compromise claims, that such authority could not be implied, and that, therefore, neither the city manager nor the corporation counsel had the authority to execute or approve a contract provision for arbitration. It further concluded, however, that the city had ratified the contract, including the provisions for arbitration, and that the city was estopped and also barred by laches from denying the validity of these provisions. Finally, the court concluded that the city had not come into court with clean hands and that it had

not established, nor was it self-evident, that it would be irreparably injured by the arbitration or that it lacked an adequate remedy at law. On the basis of these conclusions, the injunctive relief was denied.

I

The plaintiff claims on appeal that the court erred in finding ratification, estoppel and laches. It further claims that the court was unjustified in going outside the stipulation of the parties by introducing and deciding the issues of unclean hands, irreparable harm, and lack of an adequate remedy at law. We hold that the trial court did not err in going beyond the stipulated issues. The questions of irreparable harm and availability of an adequate remedy at law are threshold issues which the court must consider before it can determine whether injunctive relief is warranted, and, therefore, the court's conclusions on these issues alone are dispositive of the plaintiff's appeal.

In its prayer for equitable relief, the plaintiff city was claiming the extraordinary remedy of an injunction. This is a power that courts exercise cautiously. A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. The allegations and proof are conditions precedent to the granting of an injunction. *Stocker* v. *Waterbury*, 154 Conn. 446, 449, 226 A.2d 514 (1967); *Theurkauf* v. *Miller*, 153 Conn. 159, 161, 214 A.2d 834 (1965); *Stapleton* v. *Lombardo*, 151 Conn. 414, 416, 198 A.2d 697 (1964). These elements are so crucial that a party's failure to allege and prove them is sufficient ground for sustaining the refusal

to grant an injunction, even where a court's conclusions on the merits are erroneous. *Koepper* v. *Emanuele,* 164 Conn. 175, 177, 319 A.2d 411 (1972).

In this case, the plaintiff did not allege either irreparable harm or lack of an adequate remedy at law, and no evidence was introduced on either point. Thus, the court was clearly justified in refusing to enjoin the arbitration proceedings. The plaintiff city argues that the imminence of unauthorized arbitration is, in itself, adequate to establish irreparable harm and lack of an adequate remedy at law and cites this court's recent decision in *Policemen's and Firemen's Retirement Board* v. *Sullivan,* 173 Conn. 1, 12, 376 A.2d 399 (1977), as authority. In that case, however, we were upholding the discretionary judgment of the trial court in granting injunctive relief, and the language on which the plaintiff relies merely states that the imminence of unauthorized arbitration, under the facts of that case, was an adequate basis to support the decision of that court that there was no adequate remedy at law and that those plaintiffs would suffer irreparable harm.

The court here, in the exercise of its discretion, determined that injunctive relief was inappropriate. As previously noted, it concluded, inter alia, that the city of Hartford had not established, nor was it self-evident, that it would be irreparably injured or that it lacked an adequate remedy at law. "Even where the danger of irreparable injury is shown, the granting of an injunction is not mandatory but within the sound discretion of the court. Until it is shown that the court's discretion was abused, there can be no reversal of the court's action in denying the injunction." *Koepper* v. *Emanuele,*

supra, 178; see *Crouchley* v. *Pambianchi,* 152 Conn.
224, 226–27, 205 A.2d 492 (1964). We find that the
court did not abuse its discretion in denying injunc-
tive relief; therefore, we need not reach the plain-
tiff's claimed errors regarding ratification, estoppel,
and laches.

## II

In its cross appeal, Gilbane argues that the trial
court erred in concluding that the city manager was
not authorized to bind the city to the arbitration
provisions in the contract. It is Gilbane's contention
that the city manager's authority to agree to this
provision for arbitration can be properly implied
both from his authority to enter into the contract on
behalf of the city and from his general duties, func-
tion and authority as city manager and chief execu-
tive officer of the city of Hartford. We agree.

The city does not challenge the validity of the
contract as a whole, nor does it claim that the city
could not agree to be bound by a provision for arbi-
tration in a construction contract. Its objection to
the provisions here in question is that they were
never approved by the court of common council,
which, it argues, is the sole body authorized to bind
the city to arbitration. The trial court determined
that the common council had not delegated its
authority to institute actions or compromise claims
and that, therefore, neither the city manager nor the
corporation counsel had the power to institute
actions or compromise claims. On this basis it con-
cluded that neither the city manager nor the corpo-
ration counsel had the authority to execute or
approve a contract provision for arbitration, and
that such authority could not be implied.

The power of a municipal corporation to submit to arbitration is incident to its capacity to contract or make settlements or its power to sue and be sued, and may be exercised only by its governing body or by an agent to whom such authority has been delegated. Annot., 20 A.L.R.3d 569, § 5; 5 Am. Jur. 2d, Arbitration and Award, § 68. The Hartford city manager had been delegated the authority to contract on behalf of the city,[2] but there was no delegation of authority to make settlements. The contested arbitration provisions were part of the contract which the city manager had authority to execute, but they related to a procedure for settlement of claims. The crucial question, then, is whether the authority to agree to the arbitration provisions can be implied from the power to contract, or whether the provisions are within the common council's exclusive authority to settle claims.

When a general power is given to a municipal officer, whatever is necessary for effective exercise of that power is, in the absence of express authority, conferred by implication. 56 Am. Jur. 2d, Municipal Corporations, § 276. Thus, in the case of *Union* v. *Crawford,* 19 Conn. 331, 336 (1848), this court held that the authority of selectmen to prosecute and defend suits on behalf of the town could be implied from their general authority to superintend the concerns of the town and to adjust and settle all claims against it. In *Hine* v. *Stephens,* 33 Conn. 497, 503–504 (1866), and *Mallory* v. *Huntington,* 64

---

[2] Although the trial court did not specifically find that such authority had been delegated to the city manager, it did find that he had executed the contract with Gilbane and that he was a proper person to sign it on behalf of the city. By alleging the existence of a contract in its complaint, the city has implicitly conceded the delegation of such authority.

Conn. 88, 94, 29 A. 245 (1894), the authority of selectmen to submit a claim to arbitration was implied from the general power to prosecute and defend suits. See *Union* v. *Crawford,* supra. It is clear that this court has long been willing to imply to town officials those powers reasonably necessary to implement authority expressly delegated. It is also true, however, that such implied authority may be limited under the facts of a particular case; see *Mallory* v. *Huntington,* supra, 96–97; or by express restrictions on such power. See *Union* v. *Crawford,* supra, 337.

In this context, we turn to a review of the facts of the case before us. As previously stated, the procedures followed in the preparation and award of the city-Gilbane contract were those normally followed by the city's administrative officers. The city had authority to enter into the contract, and the city manager, as chief executive officer, was a proper person to execute the contract on behalf of the city. Arbitration provisions are not an unusual feature in a construction contract; in fact, this state has long favored arbitration as a means of settling disputes. *Waterbury Teachers Assn.* v. *Waterbury,* 164 Conn. 426, 434, 324 A.2d 267 (1973); *International Union* v. *Fafnir Bearing Co.,* 151 Conn. 650, 653, 201 A.2d 656 (1964); see *Hine* v. *Stephens,* supra, 504. On prior occasions the city of Hartford had arbitrated through to award, under the auspices of the American Arbitration Association, four other disputes arising out of construction contracts. Three of those arbitrations were based upon arbitration provisions in the building contracts identical to those in the city-Gilbane contract. None of the prior arbitrations nor the underlying contracts providing for arbitration was approved or authorized

by the court of common council; the contracts were prepared and the submissions made by administrative officers of the city without express council approval or authorization. Moreover, the record is barren of any reference to statutory or charter provisions restricting the authority of the city manager to bind the city to an arbitration clause in a duly executed contract.

Under the circumstances presented, it would thwart our public policy favoring arbitration to curtail the city manager's authority to contract on behalf of the city. See *Pytko* v. *State,* 28 Conn. Sup. 173, 255 A.2d 640 (1969). Therefore, we hold that the city manager had implied authority to bind the city to the arbitration provisions in the contract. We stress, however, that this is a limited power, not to be confused with the authority to prosecute or settle claims on behalf of the city or to submit pending claims to arbitration. Further, we emphasize that this implied authority exists only in the absence of an express restriction on the powers of the city manager. There is nothing to prevent the city from enacting such a limitation or from altering its contracting procedures to require a review and specific approval of all arbitration provisions by the court of common council. We simply hold that the city manager, with clear authority to enter into a contract of this type, had the implied power to bind the city to an arbitration clause in a contract which he executed on behalf of the city.

There is no error on the plaintiff's appeal; there is error on the defendant's appeal.

In this opinion the other judges concurred.