[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION FACTUAL BACKGROUND
This is an action seeking injunctive relief to prevent enforcement of certain waste disposal ordinances of the defendant Town of Glastonbury. The plaintiffs, Agnes Canapari, Nancy W. Lombardo, Aleksander and Frances Dunko, and RELR, Inc., contend that §§ 8-49 and 8-54[1] of the Glastonbury Code of Ordinances ("the code") violate their constitutional rights to equal protection and due process of law under Article First §§ one, eight and twenty of the Connecticut constitution. The plaintiffs also assert these code provisions contravene General Statutes §§ 22a-211, 22a-220, and 22a-259.
The defendant Town of Glastonbury does not provide for municipal pickup of solid waste generated by its citizens. The town operates a transfer station at 2340 New London Turnpike, Glastonbury which accepts solid waste from residents, resident businesses, and nonresident businesses that are doing business in town. The town then transports this waste to the regional incarceration plant run by the Connecticut Resource Recovery Authority in Hartford for disposal of these materials. Section 8-49 of the code excludes commercial solid waste collectors from the transfer station. Age and disability cause the individual plaintiffs to rely upon such commercial collectors for transportation of their solid waste to the transfer station. The transfer station fee schedule adopted pursuant to § 8-54 of the code provides those residents who self-haul garbage to the transfer station with a subsidy by charging these residents less than the full cost of disposing of their waste while municipal finances provide for the balance of expenses incurred in operating the station. The plaintiffs claim that this fee schedule provides an unfair, illegal, and arbitrary subsidy to those who self-haul their garbage to the transfer station.
A preliminary issue in this case is that of standing of the corporate plaintiff, RELR, Inc., a commercial hauler. Standing is ordinarily acquired "when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in any individual or representative capacity." CT Page 4255-GGGUnisys Corp. v. Dept. of Labor, 220 Conn. 689, 693,600 A.2d 1019 (1991). The corporate plaintiff is required under § 8-49
of the code to dispose of solid waste collected from Glastonbury residents and businesses at a location outside Glastonbury at a higher cost than if it were permitted to use the town's subsidized facilities. Section 8-49 affects RELR's ability to do business in Glastonbury by making the cost of its services more expensive, and therefore, less competitive. This direct injury suffices to confer upon this plaintiff standing to challenge the constitutionality of the ordinance which bars it from the use of the town's waste disposal facilities.
A party seeking injunctive relief has the burden of alleging and proving irreparable harm and no adequate remedy at law." Hartford v. American Arbitration Association,174 Conn. 472, 476, 391 A.2d 137 (1978). "Before a court may issue a preliminary injunction, the moving party must demonstrate . . . either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the person seeking injunctive relief. Toy Manufacturers ofAmerica v. Blumenthal, 806 F. Sup. 336, 340 (D. Conn. 1992). Where, as here, "the moving party challenges governmental action taken in the public interest pursuant to a statutory or regulatory scheme, it is held to a higher standard of a likelihood of success on the merits." Id.
The individual plaintiffs argue that the alleged violations of constitutional due process and equal protection under law are subject to a strict scrutiny standard of review due to the age and disability of these plaintiffs, particularly Mr. Dunko, who are admittedly, physically disabled. The plaintiffs base their argument upon Daly v.DelPonte, 225 Conn. 499, 512, 624 A.2d 876 (1993), in which the court held that the action of a governmental official directed against an individual based upon that person's medical disability "must be subjected to strict constitutional scrutiny." In Daly, however, it was "undisputed that the commissioner's decision to place conditions on the plaintiff's license was based on the plaintiff's status as an individual who suffers from a medical disability." Id., 512. In contrast, the ordinances at issue in the instant case were not specifically directed against disabled individuals and that the language employed in §§ 8-49 and 8-54 is facially neutral. CT Page 4255-HHH Standing alone, disproportionate impact upon a suspect class does not trigger an analysis under strict scrutiny "where a law is neutral on its face and serves ends otherwise within the power of government to pursue." Washington v. Davis,426 U.S. 229, 242, 48 L.Ed.2d 597, 96 S.Ct. 2040 (1976). As noted, both § 8-49 and § 8-54 of the code are facially neutral. Furthermore, these ordinances serve to regulate solid waste disposal in a manner that would not place an undue burden on the transfer station and its employees. Therefore, under the reasoning of Davis it would be inappropriate to apply a strict scrutiny standard of review to the constitutional issues raised by the plaintiffs with regard to §§ 8-49 and 8-54.
Since the strict scrutiny standard does not apply in the instant case, the standard properly employed is that which is used in the economic sphere. "In the case of economic regulation, the test to determine constitutionality is well established in our cases . . .. Under [both the due process and equal protection provisions of the Connecticut constitution] an act regulating economic activity must bear a reasonable relationship to a proper legislative purpose in a manner that is neither arbitrary nor discriminatory. The court's function is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process and equal protection. The constitutional issue is whether legislative classifications or discriminations bear a rational relationship to a legitimate state end and are based on reasons related to the pursuit of that goal." (Citations omitted.) Blue Sky Bar Inc. v. Stratford, 203 Conn. 14, 26,523 A.2d 476 (1987).
In Hancock Industries v. Schaeffer, 811 F.2d 225 (3rd Cir. 1987), the court faced the issue of whether private trash haulers originating from outside a particular county could lawfully be excluded from that county's landfill facility. The Hancock court initially observed that "when faced with a challenge to a governmental classification under the rational basis test, a court should ask, first, whether at least one of the purposes of the classification involves a legitimate public interest and, second, whether the classification is rationally related to the achievement of that purpose." Id. CT Page 4255-III 237. In holding that preserving landfill capacity provided a rational basis for excluding waste of private trash haulers originating outside of the county, the court emphasized that "if the legislative determination that its action will tend to serve a legitimate purpose is `at least debatable' the challenge to that action must fail as a matter of law." Id., 237-38; see also Swin Resource Systems, Inc. v. LycomingCounty, 883 F.2d 245 (3rd Cir. 1989).
Prohibiting private trash haulers from using the Glastonbury transfer station serves a legitimate public interest in that acceptance of waste from commercial haulers would likely prove overly burdensome and could not be accomplished given the staffing levels and infrastructure of the transfer station. The prohibition on commercial-trash haulers is rationally related to the effective, cost-efficient operation of the transfer station because allowing such haulers to use the station could conceivably require higher staffing levels and improvement of infrastructure that is currently not necessary. Therefore, the prohibition on commercial trash haulers under § 8-49 of the code meets the two-pronged test of Hancock and is constitutionally permissible because it is rationally related to the achievement of a goal that involves a legitimate public interest.
It is also recognized that "a statutory classification `need not be drawn so as to fit with precision the legitimate purposes animating it.'" Swin Resource Systems Inc. v.Lycomina County, 883 F. Sup. 256 quoting Hughes v. AlexandraScrap Corp., 426 U.S. 794, 813, 96 S.Ct. 2488, 49 L.Ed.2d 220
(1976). This court finds that the detrimental effect that the ordinances at issue may have on individual citizens does not detract from the legitimate need of the municipality to prudently manage its waste disposal facility by excluding garbage collected by commercial haulers.
The plaintiffs also maintain that the fee schedule adopted pursuant to § 8-54 of the code is violative of their equal protection and due process rights. The individual plaintiffs claim that the town subsidized fees paid by those who self-haul their garbage to the transfer station are constitutionally impermissible because such subsidies are denied to others. "Economic legislation `carries with it a presumption of rationality that can only be overcome by a CT Page 4255-JJJ clear showing of arbitrariness and irrationality' such that `the varying treatment of different groups . . . is so unrelated to the achievement of any combination of legislative purposes that we can only conclude that the legislature's actions were irrational.'" Swin Resource Systems Inc. v.Lycoming County, supra, quoting Kadrmas v. Dickenson PublicSchools, 487 U.S. 450, 462-63, 108 S.Ct. 2481, 101 L.Ed.2d 399
(1988). The fee schedule adopted pursuant to § 8-54 cannot be considered to be arbitrary and irrational since the financial benefit provided to those individuals who haul their own trash to the transfer station is a means by which the municipality discourages the use of commercial haulers. Reliance upon commercial haulers by town residents could likely lead to abuses such as commercial haulers unduly burdening the transfer station and its employees with solid waste produced by and collected from non-residents. Additionally, the handling of commercially hauled garbage could prove such a difficult task for the current staffing and infrastructure of the transfer station that a financial incentive to self-haul, garbage is rationally related to the legitimate public interest objective of maintaining the present transfer station and staffing levels. Therefore, the fee schedule, which adversely affects all who do not self-haul regardless of whether they are of advanced age or afflicted with a disability, is constitutionally permissible as rationally related to a legitimate governmental objective.
Lastly, the plaintiffs' claim that §§ 8-49 and 8-54 of the code violate General Statutes §§ 22a-211, 22a-220 and 22a-259
is without merit. The statutes in no way prohibit the exclusion of commercial haulers from a transfer station and do not forbid a favorable fee schedule for those who self-haul solid waste. Moreover, General Statutes § 22a-220 provides that a municipality may levy a charge for the disposal or processing of solid waste brought to a disposal facility. Therefore, the fee schedule adopted pursuant to § 8-54 of the code is statutorily authorized.
In conclusion, §§ 8-49 and 8-54 of the code bear a rational relationship to the efficient and effective operation of the town transfer station. Such operation is a proper and legitimate goal of government land is in the public interest. Consequently, these code provisions are permissible under both the due process and equal protection clauses of the Connecticut constitution. Similarly, these code provisions CT Page 4255-KKK are acceptable under Connecticut's statutory scheme of solid waste regulation.
For the reasons stated above, the plaintiffs' application to temporarily and permanently enjoin enforcement of the 1994-1995 fee schedule adopted pursuant to § 8-54 of the code is denied as is the plaintiffs' request to enjoin enforcement of § 8-49 of the code.