[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, Peter B. Linden served a demand for arbitration on the plaintiffs, John T. Bays, David Osborne and EE Linden Associates, Inc., seeking to arbitrate a dispute regarding the redemption value of defendant's one-third ownership interest in the stock of the plaintiff corporation. The defendant also seeks to resolve a dispute over the classification of his termination, which effects the timing of the commencement of the payout of this redemption value.
The plaintiffs filed a complaint on March 9, 1998, seeking to preclude arbitration pursuant to General Statutes § 52-408. The plaintiffs filed a memorandum in support of the action to preclude arbitration, and the defendant filed a memorandum in opposition. This court heard argument on March 9, 1998. Both parties submitted supplemental briefs at the court's request, and brief reargument was held on May 18, 1998.
The plaintiff corporation was founded by the defendant's parents. The defendant's parents sold the corporation to the plaintiffs Bays and Osborne and the defendant, Peter B. Linden, pursuant to three stock purchase agreements. The stock purchase agreement between plaintiff Osborne and the defendant's parents was entered into on September 19, 1991. A separate stock purchase agreement between the defendant and his parents was entered into on September 19, 1991. Another separate stock purchase agreement between plaintiff Bays and the defendant's parents was entered into on January 27, 1992. Plaintiffs Bays and Osborne, and the defendant each own a one-third interest in the corporation. CT Page 6391
The defendant seeks arbitration based on identical arbitration clauses contained in each of the three stock purchase agreements and labeled therein as section 7.15 Section 7.15 of the stock purchase agreements provides as follows: "Any controversy or claim arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration to be held in Stamford, Connecticut, before a panel of three (3) arbitrators, in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."
The plaintiffs argue that the current disputes are not arbitrable because there is no agreement between the plaintiffs and the defendant requiring arbitration. The plaintiffs assert that the stock purchase agreements expired by their own terms on July 1, 1994, that these agreements were not between the plaintiffs and the defendant, and that redemption price and payout period are governed by the plaintiff corporation's by-laws which do not require arbitration of disputes.
The defendant argues that the determination of whether a dispute is arbitrable must be made by an arbitrator pursuant to the arbitration clause in § 7.15 of the stock purchase agreements, and not by the court. Alternatively, the defendant argues that if the court finds that it has jurisdiction to determine arbitrability, the court must find that a demand for arbitration is appropriate because the stock purchase agreements are still binding and were drafted as "not only a mechanism for transferring ownership of the corporation, but also a tool for managing as well." See Defendant's Memorandum p. 6.
"Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . Even though it is the policy of the law to favor settlement of disputes by arbitration . . . arbitration agreements are to be strictly construed and such agreements should not be extended by implication. Accordingly, the basis for arbitration in a particular case is to be found in the written agreement between the parties. . . . Persons thus cannot compel arbitration of a disagreement between or among parties who have not contracted to arbitrate that disagreement between or among themselves." (Citations omitted.) Wesleyan University v. RissilConstruction Associates, Inc., 1 Conn. App. 351, 354-55,472 A.2d 23, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). CT Page 6392
Before addressing the issues of who determines arbitrability and whether a dispute is arbitrable under an arbitration agreement, the court must address the threshold issue of whether an agreement to arbitrate even exists among these parties. In the present case, this court must first determine whether the arbitration clauses in the stock purchase agreements constitute an arbitration agreement among these parties.
The three stock purchase agreements, which contain the arbitration provision in issue, were separate agreements. One agreement was between the defendant's parents and plaintiff Osborne; one agreement was between the defendant's parents and the defendant; and one agreement was between the defendant's parents and plaintiff Bays. There was no agreement between the defendant and any of the plaintiffs. The plaintiffs were not parties to the agreement involving the defendant, and the defendant was not a party to either agreement involving the plaintiffs.
Although nonsignatories can become contractually bound to an arbitration agreement, this case does not present such a situation. In the present case, there is no issue of agency. SeeTotal Property Services of New England Inc. v. Q. S.C. V. Inc.,30 Conn. App. 580, 587, 621 A.2d 316 (1993). In the present case, there is no agreement among the parties that incorporates by reference the arbitration provision of the stock purchase agreements. See Wesleyan University v. Rissil ConstructionAssociates, Inc., supra, 1 Conn. App. 354.
This court finds that the stock purchase agreements were limited in both time and scope. These were agreements for the defendant's parents to sell, and the individual named therein to buy, a specific number of shares in the plaintiff corporation on July 1, 1994. The agreements set forth the terms of the transactions and contain numerous covenants which apply "[d]uring the term of this [a]greement." The closing date is specified as July 1, 1994. There is also a section entitled "termination" which describes events which will terminate the buyer's rights to purchase and the seller's obligation to sell. The agreements further provide that the buyer cannot assign his rights to buy without the written consent of the sellers. This court concludes that these agreements were limited in scope to the transfer of ownership of shares between the named buyer and sellers, and in time to the period between execution of the agreements and CT Page 6393 performance of the stock ownership transfer.
The court rejects the defendant's assertions that the agreements were intended to be a managing tool with several provisions lasting beyond the July 1, 1994 transfer of stock ownership and finds that the plain language of the documents, when read as a whole, support a limited applicability. "[W]e construe a contract as a whole and all relevant provisions are considered when determining the intent of the parties." White v.Kampner, 229 Conn. 465, 473, 641 A.2d 1381 (1994).
This court also rejects the defendant's argument that the stock purchase agreements are to be interpreted in conjunction with the corporation by-laws which were drafted subsequently.
The defendant cites Spicer v Spicer, Superior Court, judicial district of New London at New London, Docket No. 523339 8 CONN. L. RPTR 131 (December 29, 1992, Hendel, J.), 33 Conn. App. 152, 634 A.2d 902, cert. denied, 228 Conn. 920 (1994), in support of that argument. The Spicer case is distinguishable. There, the defendant and the plaintiff's decedent were business partners and entered into a buy/sell agreement covering the intervivos sale of their business interests and transfer upon either party's death or disability. The agreement contained an arbitration clause that applied to any disagreement as to the value of the businesses and any other matter connected with the agreement. Several years later, the parties executed a "memorandum of understanding" in which the defendant agreed to buy and the plaintiff's decedent agreed to sell the decedent's interest in the businesses. The memo contained the price, pay schedule, and other sale terms. When the defendant stopped making scheduled payments after the decedent's death, the estate sought to compel arbitration of the dispute. The defendant argued that the arbitration clause in the original agreement did not encompass the dispute over the memorandum. The court found that the memorandum was a matter connected to the agreement and should be submitted to arbitration. Significantly, the court made this finding because the memorandum simply detailed a contingency covered in the original agreement, i e., the intervivos transfer of one party's business interest
In the present case, the corporation's by-laws, as revised after the stock purchase agreements, do not detail a contingency, namely redemption, contemplated in those earlier agreements. The stock purchase agreements are transaction specific, and thus, are limited to their terms. To read the arbitration provision into CT Page 6394 the by-laws would effectively amend the by-laws in violation of the provision for amendment in article VI.
"The intent of the parties that arbitration be the exclusive method for the settlement of disputes arising under the contract must be clearly manifested. . . . An agreement to arbitrate must be clear and direct and not depend on implication." (Internal quotation marks omitted.) Jacob v Seaboard, Inc.,28 Conn. App. 270, 273, 610 A.2d 189, cert. denied, 223 Conn. 923 (1992)
The defendant contends that an injunction should not be granted in this case because the plaintiffs have not shown irreparable harm, and that they must fail a balancing of the equities test. The defendant relies on Hartford v. AmericanArbitration Assn., 174 Conn. 472, 391 A.2d 137 (1978) for the proposition that irreparable harm and lack of an adequate remedy at law are not presumed solely because a party may be forced to proceed with arbitration, and they remain threshold issues that the court must consider before issuing an injunction.
In Hartford the Supreme Court found that the trial court had not abused its discretion in denying an injunction where the plaintiff did not allege or prove irreparable harm or lack of an adequate remedy at law, and the trial court did not find it to be self-evident. In contrast, in Policeman's Fireman's RetirementBoard v. Sullivan, 173 Conn. 1, 376 A.2d 99 (1977), another Supreme Court case decided the year before Hartford, the court upheld the trial court's decision granting an injunction where it found irreparable injury and an inadequate legal remedy based on proof that one party intended to proceed to arbitration. This court, therefore, does not read Hartford as holding that the imminence of unauthorized arbitration is, in itself, inadequate to establish irreparable harm and lack of an adequate legal remedy. Instead, this court reads it as simply saying that the trial court did not abuse its discretion in finding that irreparable injury and lack of an adequate legal remedy were not established or self-evident in that case.
In the present case, the court finds that the defendant has shown that he intends to proceed with arbitration. Based on the facts of this case and the lack of an agreement to arbitrate, the court finds that irreparable harm and lack of an adequate remedy at law are evident since the plaintiffs are threatened with participating in an arbitration process where the arbitrator has CT Page 6395 no authority;
This court finds that no agreement to arbitrate exists among these parties, and therefore, an injunction is appropriate. Accordingly, the court orders that the defendant is enjoined from proceeding with arbitration.
DEAN, J.