JULIUS BERIN v. HERBERT R. OLSON ET AL.

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued January 13—decision released March 17, 1981

*Edward T. Dodd, Jr.,* for the appellants (defendants).

*Michael E. Grossman,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. The sole issue on this appeal is whether the trial court erred in granting a permanent injunction against the defendants.

At the time of the action, the plaintiff was the owner of a plot of land, on which he had erected three apartment buildings in 1968. The property in question is located on the east side of Queen Street, in the town of Southington. Directly north of the land is a Caldor department store complex. Immediately east is other land of the plaintiff, on which he planned to build another apartment building, followed by adjoining land of the defendants, a pond, and then the defendants' machine shop.

To the southeast lies other land of the defendants, which had been excavated and denuded of foliage to the extent of several acres. The natural flow of the water prior to the excavation and denuding was westerly, in the direction of the plaintiff's property, except for part of the flow which was in a northwesterly direction.

After the plaintiff had constructed his apartment buildings, he had no problems with water in the basement or parking lots. Thereafter, from about 1970 to 1973, the defendants began grading their land, removing top soil and natural foliage, and selling gravel for highway construction. They also leveled a portion of their property where they constructed a machine shop.

This activity on their land had two effects: (1) a sizable acreage of their land was reduced in ele-

vation to approximately the height of the easterly boundary of the plaintiff's property; and (2) the natural flow of the surface water was changed so that it concentrated into rivulets and flowed onto the plaintiff's land. The volume and speed of the surface water flowing onto the plaintiff's land was thereby increased, causing frequent cellar flooding in one of the plaintiff's apartment buildings.[1]

In order to protect his building and the tenants, the plaintiff dug a trench, which directed a sizable part of the water flow around the rear of his buildings and into a culvert on Queen Street, which was maintained by the city. However, this did not remedy the entire waterflow problem caused by the defendants' activities; some of the water still flowed onto the plaintiff's parking lot and cul-de-sac, depositing sediment and freezing in the winter. To the rear of his building, the trench sometimes overflowed, spilling out water onto a second parking lot and freezing, causing a dangerous condition.

In 1973, the plaintiff commenced an action against the defendants for money damages, a temporary injunction and a permanent injunction. As part of his damages, plaintiff claimed $1565 for waterproofing a cellar and installing drain tile. This work added to the value of the building, but would not have had to be done absent the defendants' actions.

The court rendered judgment against the defendants in an amount of $2277.50 plus taxable costs, and rendered a permanent injunction against the defend-

---

[1] The parties each produced an engineer as an expert who testified concerning the surface water problems involved in this case. This evidence presented a question of credibility which the trial court resolved in favor of the plaintiff. See *Slepski* v. *Williams Ford, Inc.,* 170 Conn. 18, 22–23, 364 A.2d 175 (1975).

ants forever enjoining them, under penalty of $2000, "from diverting surface water from their land over and upon land of the plaintiff and from increasing the volume of surface water flowing from their land upon the land of the plaintiff." The defendants have appealed only from the granting of the injunction.

On appeal, the defendants appear to make three contentions as to why the court erred in granting an injunction: (1) the plaintiff did not prove irreparable injury or the lack of an adequate remedy at law; (2) the equities do not balance in favor of the plaintiff; and (3) laches bars the request for an injunction.

I

We have repeatedly held that the issuance of an injunction rests in the sound discretion of the trial court. *O'Neill* v. *Carolina Freight Carriers Corporation,* 156 Conn. 613, 618, 244 A.2d 372 (1968); *Taylor* v. *Conti,* 149 Conn. 174, 181, 177 A.2d 670 (1962); *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 83 A.2d 177 (1951). "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." *Hartford* v. *American Arbitration Assn.,* 174 Conn. 472, 476, 391 A.2d 137 (1978); see *Town of Waterford* v. *Grabner,* 155 Conn. 431, 232 A.2d 481 (1967); *Theurkauf* v. *Miller,* 153 Conn. 159, 161, 214 A.2d 834 (1965); *Stapleton* v. *Lombardo,* 151 Conn. 414, 416, 198 A.2d 697 (1964). The plaintiff clearly alleged both of these elements in his complaint. We do not agree with the defendants' claim that the record does not support the allegations of irreparable harm and lack of an adequate remedy at law.

The trial court found that prior to the defendants' activities, the plaintiff had no problem with flood-

ing. It was only after the defendants started
grading and improving their property that the
plaintiff's problems occurred. The court specifically
concluded that as a result of the defendants' activi-
ties, the natural flow of the surface water changed,
which increased the volume and speed of the water
flowing onto the plaintiff's land, causing "frequent
cellar flooding."

The plaintiff attempted to protect his building
by digging a trench, but this did not solve the prob-
lem. The water from the trench overflowed, leaving
sediment and causing dangerous conditions, espe-
cially in the winter. We have stated that:
"[W]hether damages are to be viewed by a court
of equity as 'irreparable' or not depends more upon
the nature of the right which is injuriously affected
than upon the pecuniary loss suffered. *Robertson*
v. *Lewie,* 77 Conn. 345, 346, 59 Atl. 409 [1904]; *Dan-
bury & Norwalk R. R. Co.* v. *Town of Norwalk,* 37
Conn. 109, 120 [1870]; *Sisters of St. Joseph Corpo-
ration* v. *Atlas Sand, G. & S. Co.,* 120 Conn. 168,
176, 180 Atl. 303 [1935]." *Burroughs Wellcome &
Co.* v. *Johnson Wholesale Perfume Co.,* 128 Conn.
596, 604–605, 24 A.2d 841 (1942). We hold that the
trial court did not abuse its discretion in concluding
that the defendants' actions substantially and irrep-
arably damaged the plaintiff and that the plaintiff
did not have an adequate remedy at law.[2]

The defendants also contend that an adequate
remedy at law existed, as evidenced by the fact that
the plaintiff was awarded damages, and because the
plaintiff could keep coming back to the courts for

[2] Although the trial court did not have the advantage of our deci-
sion in *Page Motor Co.* v. *Baker,* 182 Conn. 484, 438 A.2d 739
(1980), under the circumstances of this case, we conclude that
*Page* does not require a different result.

damages if he should sustain any further injury by the defendants' acts. The fact that the court awarded damages does not preclude the plaintiff from receiving injunctive relief. See *Taylor* v. *Conti,* supra (award of both damages and injunctive relief); 42 Am. Jur. 2d, Injunctions § 40, p. 780; 5 Clark, Waters and Water Rights § 458. "For over one hundred years in this state, we have recognized the general power of equity to afford relief by injunction and damages for injury caused by a nuisance created by the unreasonable conduct on one's own property of an otherwise lawful activity. [Citations omitted.]" *Nair* v. *Thaw,* 156 Conn. 445, 451–52, 242 A.2d 757 (1968) (award of money damages and injunction restraining certain activity of the defendant). "A remedy at law, to exclude equity jurisdiction, must be as complete and beneficial as the relief in equity." *Beach* v. *Beach Hotel Corporation,* 117 Conn. 445, 453, 168 A. 785 (1933); *Winestine* v. *Rose Cloak & Suit Co.,* 93 Conn. 633, 638, 107 A. 500 (1919). Under the circumstances of this case as set out above, it is clear that the plaintiff's remedy at law was not adequate.

While it is correct that the plaintiff would have an action at law for damages for any further injury from the defendants, that hardly prevents equitable relief in this case for at least two reasons. Firstly, as we have said, "[t]he prevention of a multiplicity of actions at law is one of the special grounds of equitable jurisdiction, and for that purpose the remedy by injunction is freely used, and that, too, although there may be a legal remedy." *Hammerberg* v. *Leinert,* 132 Conn. 596, 602, 46 A.2d 420 (1946); see also 4 Pomeroy, Equity Jurisprudence (5th Ed. Symonds) § 1357. Secondly, the circumstance that the injury or the potential for injury is

of a continuing nature permits the intervention of equity. See *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.,* supra, 604; *Robertson* v. *Lewie,* supra, 346–47; 5 Clark, Water and Water Rights § 458.1. It is, therefore, settled that injunctive relief is designed to prevent that which the defendants argue as a reason to preclude such relief, i.e., a multiplicity of lawsuits.

## II

The defendants next claim that the court erred in granting the injunctive relief since the equities of the case do not balance in favor of the plaintiff. This court has noted that although the granting of an injunction rests within the sound discretion of the trial court, "[i]n exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." *Moore* v. *Serafin,* 163 Conn. 1, 6, 301 A.2d 238 (1972), and cases cited therein. "The relief granted must be compatible with the equities of the case. *Moore* v. *Serafin,* 163 Conn. 1, 5, 301 A.2d 238 [1972]; *Gerald Park Improvement Assn., Inc.* v. *Bini,* 138 Conn. 232, 236, 83 A.2d 195 [1951]." *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 356, 365 A.2d 1093 (1976). We must assume, because of the absence of anything in the record to indicate the contrary, that before entering its order the court properly weighed the equities between the parties to the action. See *Gerald Park Improvement Assn., Inc.* v. *Bini,* supra, 237. We cannot find error on this claimed basis since the defendants do not point to any evidence which was presented to the trial court to demonstrate how and to what extent they would be harmed by the granting of the injunction. In the absence of such evidence, we cannot find error.

## III

The defendants claim finally that laches should prevent the issuance of the injunction in this case. Their reasoning is as follows: "[T]he Defendants-Appellants' activities of excavation and development commenced in 1970. The trial did not occur until approximately nine years later. Certainly, this appears to be a classic example of laches and on that basis alone, it would be inequitable to grant any injunctive relief." We fail to see how, with respect to our case law, this is a "classic example" of laches.

We have continually held that laches consists of two elements. " 'First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant.' *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 685, 116 A.2d 906 (1955); *Kievman* v. *Grevers,* 122 Conn. 406, 411, 189 A. 609 (1937); 27 Am. Jur. 2d, Equity § 152. The mere lapse of time does not constitute laches; *Finucane* v. *Hayden,* 86 Idaho 199, 206, 384 P.2d 236 (1963); 27 Am. Jur. 2d, Equity § 163; unless it results in prejudice to the defendant; see *Leary* v. *Stylarama of New Haven, Inc.,* 174 Conn. 217, 219, 384 A.2d 377 (1978); *Bianco* v. *Darien,* 157 Conn. 548, 556, 254 A.2d 898 (1969) . . . ." *Bozzi* v. *Bozzi,* 177 Conn. 232, 239, 413 A.2d 834 (1979). "Laches in legal significance is not mere delay, but delay that works a disadvantage to another." 1 Pomeroy, Equity Jurisprudence (5th Ed. Symonds) § 419d. "A conclusion that . . . [a party] has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law." *Kurzatkowski* v. *Kurzatkowski,* supra, 684.

We initially note that although the trial did not occur until approximately nine years after the defendants' activities commenced in 1970, the plaintiff filed his complaint in 1973. Secondly, nothing in the record has been pointed out to us upon which the trial court reasonably could have found laches. There is nothing in the court's memorandum of decision or, for that matter, in the defendants' brief, to indicate that the plaintiff took any action which was inexcusable or prejudicial to the defendants so as to justify a conclusion of laches.

There is no error.

In this opinion the other judges concurred.