[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This suit involves a controversy between a developer and a number of unit owners in a condominium project in Stamford regarding control of the condominium association. The plaintiff is Pacific Development Corporation (Pac Dev), the developer and declarant, and the defendants are four individual unit owners, Mayann Weinberg, William Wagner, Marty Liljequist, and Bob Schwartzkopf, who are or were on the executive board of the condominium association. The plaintiff seeks a temporary injunction prohibiting the defendants from continuing to control the association's executive board. CT Page 7287
The condominium is known as The Village at Stamford Landing Condominium, and consists of residential units, dock units and one commercial marina and facility unit. A Declaration of Condominium and Public Offering Statement were filed in the Stamford Town Clerk's Office on November 19, 1987. The controversy concerns what percentage of the units have been sold. The plaintiff contends that it has sold less than forty per cent of the units, and the defendants claim that more than sixty per cent have been sold. The resolution of this issue depends upon an interpretation of Article VII, section 11 of the declaration, which reads as follows:
 (a) Subject to Subsection (b), there shall be a period of Declarant control of the Association, during which the Declarant or parties designated by it, may appoint and remove the officers and members of the Executive Board. The period of Declarant control shall terminate no later than the earlier of: (1) sixty days after conveyance of sixty per cent of the Units that may be created to Unit Owners other than a Declarant; (2) two years after all Declarants have ceased to offer Units for sale in the ordinary course of business; or (3) two years after any right to add new Units was last exercised. . . .
 (b) Not later than sixty days after conveyance of one-third of the Units that may be created to Unit Owners other than a Declarant, at least one member and not less than one-third of the members of the Executive Board shall be elected by Unit owners other than the Declarant.
This provision of the declaration conforms with General Statutes 47-245(d) of the Common Interest Ownership Act (CIOA), which provides that declarant control of the executive board will terminate "after conveyance of sixty per cent of the units that may defendants have violated General Statutes 47-74(c), which prohibits a condominium association from taking any action which is detrimental to the declarant's sale of units. The fourth count seeks an injunction against the defendants' continued control of the executive board on the ground that Pac Dev is suffering immediate and irreparable harm and is without an adequate remedy at law. CT Page 7288
The facts in this dispute do not appear to be contested to any great degree. The controversy between Pac Dev and the unit owners over control of the executive board arose from the meeting called by the defendants for September 24, 1991. The defendants and other unit owners, with the advice of counsel, determined that more than sixty per cent of the units had been sold, and therefore the unit owners were entitled to control sixty per cent of the membership on the condominium association's executive board. The defendants were elected to the executive board by the unit owners and assumed de facto control of the condominium project.
In early 1992, the plaintiff, acting by its president and chief executive officer, John J. Ginter, III, in an attempt to resolve the continuing controversy, suggested the formation of a seven person board consisting of the four unit owners, plus himself, another Pac Dev representative, and a representative of the managing agent. The unit owners of course controlled this new board and soon thereafter Mr. Ginter and his colleague resigned and the unit owners continue to manage the affairs of the condominium project.
The starting point for this analysis is to determine the meaning of the phrase "units that may be created," which is used both in the declaration and in General Statutes 47-245(d). The plaintiff and the defendants disagree about what this phrase means, and this in turn leads to the controversy over whether sixty per cent of the units that "may be sold" have in fact been sold. The declaration of condominium and the public offering statement provide that Pac Dev could construct an additional 100 residential units, 75 of which were located on an adjacent parcel of land owned by the LoRusso family, which is also known as the Marshall's Express property, and is approximately two and a half acres.
It is undisputed that the plaintiff did not own the LoRusso property or have an option to purchase at the time the declaration and public offering statement were recorded. It is also undisputed that these documents and the survey and plans contain a number of references to possible future acquisition and development of the adjacent property, and that the LoRusso interests have cooperated with plaintiff in terms of applications to the Stamford Planning and Zoning Commission, the Army Corps of Engineers, and the state Department of Environmental Protection to develop the property. In addition, during the course of the trial, plaintiff received a "non-exclusive option" to purchase the LoRusso property for a price CT Page 7289 to be determined by appraisal. Either party could cancel the option if the appraised value "is not satisfactory." Therefore, the issue is whether a developer may declare units on land over which he has no ownership interest or other rights.
CIOA refers to a development right as one "reserved" in the declaration to add real property to a common interest community, General Statutes 47-202(14), but does not indicate whether ownership or some rights over the additional land is required. If the 75 units on the LoRusso property are counted, less than 60% of the units that may be created have been sold, and if they are not counted, then more than 60% of the units have been sold, and the units owners have the right to continue their control of the executive board of the condominium association.
In this proceeding the plaintiff seeks a temporary injunction as authorized by General Statutes 52-471. The criteria for the issuance of a temporary injunction have been set forth in a number of cases. For example, in Griffin Hospital v. Commission on Hospitals Health Care, 196 Conn. 451, 457, 493 A.2d 229 (1985), the court said the purpose of a temporary injunction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits." The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of success." Id. In addition, a court must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. According to Berin v. Olson, 183 Conn. 337, 340, 439 A.2d 357
(1981): "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks and citations omitted.) A dissent in an Appellate Court decision in Rhode Island Hospital Trust National Bank v. Trust, 25 Conn. App. 28, 39-40, 592 A.2d 417
(1991), summed up the criteria for a temporary injunction as follows: "the plaintiff must establish that protectable interests are at stake, that it will prevail, to a reasonable certainty, subsequent to a final hearing on its application for permanent injunction, and also irreparable injury and lack of an adequate remedy at law. . . . The principal purpose of such an injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits. . . . In deciding whether it should be granted . . . the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny . . . it may result in great harm to CT Page 7290 the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting . . . it, unless indeed, it is very clear that the plaintiff is without legal right . . . The court must consider the probable outcome of the litigation, and whether an irreparable loss will result unless the status quo is preserved." (Internal quotation marks and citations omitted.)
Based on these standards, I do not believe the issuance of a temporary injunction is warranted, primarily because the plaintiff has not satisfied its burden of showing probable success on the merits at the time when the request for a permanent injunction is heard. I think it more likely than not that the trier will conclude that Pac Dev did not have the right to declare units on the adjoining property which it did not own or have any ownership rights. Otherwise, a declarant could include property far away or property where there was little likelihood of ever obtaining ownership, in order to increase the number of units that "may be sold," thus maintaining declarant control and development rights until seven years had expired. Articles V and VII of the declaration permit declarant control to exist for seven years after the declaration was recorded, viz., until November, 1994.
A witness for the plaintiff suggested that the test is whether the developer had a bona fide intent to acquire the other property. This would require purchasers to look into the mind of the developer and ascertain his future plans. Even if the option from LoRusso gave the plaintiff a form of ownership rights over the adjacent property, it may well be determined ultimately at a full trial that such rights need to be in existence at the time the declaration and public offering statement are recorded.
Another consideration in connection with issuing a temporary injunction is the balancing of the equities test. Pac Dev indicated that it plans to refinance its eleven million dollar mortgage and that a prospective lender insisted that the plaintiff control the executive board of the association. I do not believe the plaintiff adequately proved this point, since, for example, no representative of the lender testified that refinancing would only be possible if the declarant regained control of the board. However, an exhibit did indicate that First Constitution Bank, a possible lender, believed that "it is in the best interest of the project that Mr. Ginter remain in control." In balancing the equities, I have also considered the fact that the defendants have now controlled the executive board for almost two years, and would CT Page 7291 control it in any event in approximately fifteen months, or even sooner if more units are sold in the interim. My sense of the situation at the condominium is that it would be more disruptive to the best interests of all concerned to order the return of declarant control at this time. The evidence at a full hearing may, of course, produce a different result.
Employing the tests of probable success and balancing the equities, our conclusion at this time is that the issuance of a temporary injunction is contraindicated, and that the status quo should be maintained until a full hearing on the merits of a permanent injunction can be scheduled. The defendants also made a strong case that Pac Dev voluntarily surrendered control of the executive board, but this claim has not been analyzed in any depth, as it was unnecessary in view of the disposition of plaintiff's application on other grounds.
Therefore, the request for a temporary injunction is denied.
Dated at Stamford, Connecticut, this 16th day of August, 1993
William B. Lewis, Judge
Decision entered in accordance with the foregoing, 8/16/93 Asst. Clerk
All counsel notified, 8/16/93