[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Robert Bach, acting in his capacity as building official of the town of Coventry, Connecticut, commenced this action by complaint returnable to this court on December 13, 1994. The plaintiff seeks an order of the court requiring the defendant, Roger LeClair, to demolish and remove a structure from his property at 15 Well Trail in Coventry, Connecticut. The plaintiff also seeks punitive damages, costs, and attorneys' fees. On February 9, 1995 the defendant appeared, pro se, and on March 13, 1996 filed an answer to the complaint denying the allegations of the complaint. On July 31, 1997 the matter was tried to the court.
The court finds the following facts. The plaintiff is the building official of the Town of Coventry and has held that position for the past 8 years. The plaintiff is also the local health official. Prior to his present position he held a position as a building official for 5 years with the town of Tolland. He is presently certified as a building official by the state of Connecticut and has held that certification for the past 14 years. In 1992 he received a complaint from one of the defendant's neighbors that an unoccupied structure on the defendant's property was an "attractive nuisance." The building in question has been unoccupied for more than 25 years. Upon receipt of the complaint the plaintiff viewed the property to determine its condition. He CT Page 8304 found a single family house in a dense residential neighborhood populated by homes with a number of children. The property itself was located on a lot that was overgrown with vegetation. The structure itself was open at grade level, had a decaying roof, and was leaning. The plaintiff returned on May 27, 1992 to take photographs of the structure and those photographs were admitted into evidence as plaintiff's Exhibits 1 (a-j). The photographs depict a structure in severe distress. The testimony of the plaintiff confirmed the dilapidated condition of the building and the court accepts that testimony. The building itself is beyond repair although the foundation may be adequate and useable. Large areas of flooring have decayed exposing the basement, areas of roofing have also decayed exposing the interior of the structure to the elements, and window glass was missing or shattered. The building was also displaced off its foundation between 6 to 8 inches. On June 2, 1992 the plaintiff sent a certified letter to the defendant advising him that he had an abandoned structure on his property and that it had been inspected. The letter advised the defendant that, after inspection, the building department had decided to condemn the structure "as it is found to be in violation of: 1. Section 120 of the Connecticut Building Code, (and) 2. Section 19-13-B1, para. (I) of the Connecticut Health Code."[1] Plaintiff's Exhibit 5. The letter demanded a reply from the defendant within 10 days of the receipt of the letter either accepting the decision of the department or rejecting it. The defendant was also advised that if he accepted the decision of the building inspector then the repair or removal of the building should be accomplished within 60 days. Attached to the letter were pertinent sections of the Public Health Code and the Connecticut Building Code.[2]
On June 8, 1992 the defendant wrote to the plaintiff and advised him that he would attempt to secure the building "per your request". Further he advised the plaintiff that he would repair the building as soon as sewers can be extended to the property. Defendant's Exhibit C. No appeal was taken from the decision of the department. Prior to the initial inspection of the premises by the plaintiff in May of 1992, the defendant had written to the Water Pollution Control Authority in Coventry requesting that sewer lines be extended to his property. Defendant's Exhibit H. This request was denied by the Authority, however the defendant continued over the ensuing years to seek a sewer connection. The property apparently is not suitable for a septic system as the water table in the area is too high. Thus without a sewer connection the property cannot be used as a CT Page 8305 residence. Additionally the defendant is concerned that this is a non-conforming lot and if he were to dismantle the structure prior to his obtaining all the necessary permits that he may lose the right to continue its present residential use.
On June 1, 1994 the plaintiff again wrote to the defendant notifying him of the fact that he had an abandoned structure on his property and that it had been deemed unsafe as there was a risk of collapse. The plaintiff also advised the defendant that there was a risk of infestation from small animals that may be carrying rabies or other diseases. The plaintiff demanded that the defendant remove the structure or secure it. The defendant claims that since he was initially notified by the building official of the safety concerns regarding the property that he has, in fact secured the property to small animals by boarding up the windows to the building. Further the defendant offered to take the additional remedial action of surrounding the building with a snow fence. The plaintiff deemed the snow fence as inadequate protection. No repairs have been done to the building since the photographs were taken in 1992.
After receiving the building inspectors letter of decision dated June 1, 1994 the defendant sought to appeal the decision of the plaintiff to the Board of Appeals on the sole issue of his desire to secure the building through the use of 4' snow fencing. See Defendant's Exhibit 3. On August 1, 1994 the Board of Appeals held a hearing and after viewing the property determined the "building to be unsafe and unsecure and we do not consider a 4' fence to be considered adequate protection for public safety." Plaintiff s Exhibit 4. At that hearing the defendant brought up the issue of his inability to obtain a sewer connection and was advised by the Board of Appeals that this was not their issue. The minutes of the meeting also reflect that the defendant was aware of his right to appeal the decision of the Board of Appeals and that he had 14 days to do so. (see Plaintiff's Exhibit 4). The court accepts the defendant's testimony that he never received a written decision from the Board of Appeals.
The plaintiffs complaint alleges that "the parcel located at 15 Well Trail Drive contains a structure that is unsafe within the meaning of Section 120.0 of the State Building Code, as implemented pursuant to Conn. Gen. Stat. § 29-252 and the regulations promulgated thereunder." Paragraph 3, Plaintiff's Complaint, November 4, 1994. Further the plaintiff alleges that the "structure 15 Well Drive, Coventry, is unsafe, poses a threat CT Page 8306 to the safety, health and welfare of the public, and is a public nuisance within the meaning of Section 19-13-B1 of the State Public Health Code." As a result the plaintiff asks this court to issue an injunction requiring the defendant to remove the unsafe structure from the property. Further the plaintiff alleges that there is no adequate remedy at law.
The plaintiff claims, that as a matter of law, the owner of a building who fails to exhaust his administrative remedies[3] to challenge the legal validity of a land use enforcement order, cannot challenge the validity of that order in a lawsuit for an injunction to effectuate the order. Therefore, the plaintiff argues that the defendant in this case cannot raise substantive defenses to the order at the trial seeking the injunction.[4]
The defendant generally denied the allegations of the complaint and at trial claimed that the plaintiff and the Board of Appeals failed to give him written notice of the decision of the board thus denying him the ability to appeal the issue to the State Codes and Standards Committee pursuant to Section 124.7 of the State Building Code.
 I
A review of the provisions of the State Building Code in effect in 1994 is necessary to better understand the claims of the parties. Pursuant to Gen. Stat. § 29-252 the state building inspector together with the Codes and Standards Committee and with the approval of the Commissioner of Public Safety adopted a State Building Code ("code") which is contained in state regulations Sec. 29-252-1b.[5] Pursuant to that section the BOCA National Building Code was adopted as well as other national codes. Defendant's Exhibit A is the BOCA National Building Code which went into effect in 1990 as revised and supplemented on June 15, 1994. The Code clearly sets forth the procedure in which a vacant or abandoned building may be demolished or destroyed or ordered demolished or destroyed. Section 117.1 of the Code provides that it shall be unlawful for any person to erect, construct, alter, extend, repair, remove, demolish, use or occupy any building or structure in conflict with the provisions of the Code. Section 117.2 provides that notice of the violation be given to the person responsible for such violation and Section 117.3 allows the code official to seek judicial enforcement of any order issued with respect to prohibited acts under Section 117.1. These provisions are not CT Page 8307 applicable to the matter presented, however, since the defendant has not done any of the enumerated acts contained in Section 117.1. Rather he has passively allowed the deterioration of an unoccupied building over the course of twenty-five years.
Section 120.3 of the code provides that if an unsafe condition is found in a building or structure a written notice shall be served on the owner describing the building, the required repairs or improvements to be made or notice of the time frame in which the demolition of the unsafe structure must be accomplished. Further this Section requires that the owner immediately reply either accepting or rejecting those terms. A person who is aggrieved by a decision of the building inspector may demand the appointment of a Board of Survey under Code Section 123.0 to review the plaintiff s decision. Upon refusal or neglect of the person served with the order to abate the unsafe condition, legal counsel is authorized to take "the appropriate legal action to compel compliance." Code Section 120.6. No further appeal of the decision of the Board of Survey is permitted under the Code. This expedited procedure for review and enforcement of orders of the building inspector is in recognition of the fact that a finding of an unsafe condition has been made and that potentially serious ramifications may result if the situation, having been found to exist, is not remedied immediately. In fact, Code Section 121.3 allows the building inspector to take temporary measures to render the building or structure safe whether or not legal proceedings have been instituted.
The code also establishes a Board of Appeals in order to hear appeals of other matters (Section 124.1). Specifically if a party who is aggrieved by a building inspector's failure to grant a modification of certain code requirements dealing with the manner of construction or materials used in erection or alteration of a building.[6] Additionally Code Section 124.1 allows for appeals to the Board of Appeals when the code official issues a written order under Section 110.3.1 which is also not applicable to the situation presented.
 II
The court agrees with the plaintiffs contention that, as a general principle, a landowner cannot challenge the validity of an order of a municipal official in an injunction hearing in which enforcement of that order is the relief sought if the CT Page 8308 landowner has failed to exhaust his administrative remedies. Townof Greenwich v. Kristoff, 2 Conn. App. 515, 521 (1984); Johnsonv. Murzyn, 1 Conn. App. 176, 180 (1984). Nevertheless the plaintiff presented testimony that demonstrated there is no adequate remedy at law and that the community is subject to imminent and irreparable harm. Berin v. Olson, 183 Conn. 337, 340
(1981). The granting of an injunction is not mandatory, however, even in light of a showing by the plaintiff of irreparable harm. The matter lies in the sound discretion of the court. Emhart Industries,Inc. v. Amalgamated Local Union 376. U.A.W., 190 Conn. 371, 406 (1983). The court in exercising this discretion must balance the equities of the situation and balance the competing interests of the parties.
 III
The plaintiff, by its letters of June 2, 1992 and June 1, 1994 elected pursuant to Section 120.3 of the Code to proceed in its efforts to require the defendant to remove the structure. The defendant did not request that a Board of Survey be appointed. Once a finding was made that an unsafe condition existed the defendant's only appropriate recourse was to seek the appointment of a Board of Survey. It is an expedited procedure that recognizes the harm that may result from the continuation of an unsafe condition for a lengthy period of time. In the plaintiffs letter to the defendant dated June 1, 1994, Plaintiff's Exhibit 2, the defendant was put on notice that the building was "unsafe and due to collapse". The defendant was further notified that due to the "rabies epidemic" currently being experienced in this densely populated neighborhood that the plaintiff was requiring the defendant to remove or secure the structure to small animals.
Rather than reject the defendant's request to appeal the June 1, 1994 decision, as it should have, the Board of Appeals was convened and did in fact hear the appeal. The Board of Appeals decided that the building was "unsafe and unsecure" and that the proposal of a 4' snow fence was not adequate security. The defendant now claims that the plaintiff denied him his right to appeal from the decision of the Board of Appeals by their failure to forward to him a written notice of their decision. Without the written decision the defendant claims that he was denied further review by the State Codes and Standards Committee under code section 124.7. Since the defendant failed to avail himself of the right to have the plaintiff's decision reviewed by the Board of Survey under code section 123.1, he cannot now take advantage of the failure of the Board CT Page 8309 of Appeals to give him a written decision on a matter they should not have heard in the first place. In short, no right of review has been denied to the defendant.
The plaintiff also alleges that the present condition of the building constitutes a public nuisance under the State Public Health Code Section 19-13-B1. However, the plaintiff has not followed the procedures set forth in the regulations with regards to notice and hearings. More specifically the plaintiff has failed to notify the defendant of his appellate rights as well as forwarding a copy of the rules of practice under 19-2a-34 (f).[7]
The plaintiff is charged with knowing these requirements and his failure to comply with them has effectively denied the defendant his administrative appellate rights.
In balancing the equities of the situation presented, the court has considered the potential for imminent risk of injury to children in the neighborhood, the risk of arson, and the fact that the legislature has expressed a policy with regard to vacant buildings which they have defined as public nuisances in Connecticut Regulations 19-13-B1. The court has balanced these considerations against the fact that the plaintiff has failed to employ the emergency provisions under the health and building codes which are available on a temporary basis. In balancing these considerations, as well as others, the court finds that the protection of the public against this unsafe condition prevails.
Based upon the foregoing the court finds that the plaintiff has no adequate remedy at law and that the continued existence of this condition presents an imminent threat to the health and welfare of the community. Therefore the court orders the defendant within thirty days of the date of this decision, to present a plan to demolish the structure at 15 Well Trail, Coventry, Connecticut, in accordance with the State Building Code. Further the court orders the defendant, after having obtained all necessary permits, to complete the demolition of the structure within 60 days of the date of this order. The court maintains jurisdiction over this matter for the purposes of enforcing said orders or to modify them in order to effectuate this decision.
Zarella, J.