[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
1) This matter came to the court on November 16, 1999 and then to further dates until a trial was conducted on July 9 and 10, 2001. At the request of the parties, the matter was then continued until August 14, 2001 for the submission of memoranda.
2) The plaintiff submitted her brief on August 15, 2001. The defendant chose not to file a brief.
3) The parties married on October 29, 1960.
4) One of the parties has lived in Connecticut at least one year before the commencement of this action. CT Page 15974
5) There are no minor children issue of the marriage.
6) The plaintiff has suffered many health difficulties over the years. These conditions have impaired her ability to generate and accumulate assets.
7) The defendant has suffered injuries (one apparently caused by an alcohol induced automobile accident in 1972 and on the job electrocution in 1984)
8) The defendant has, on at least two occasions, infected the plaintiff with sexually transmitted diseases (1979 and 1993).[1]
9) The communication between these parties has been in a failing mode for years.
10) The defendant was apparently not interested in seeking professional assistance in repairing the relationship; rather he continued to isolate himself over the years.
11) The defendant is retired on Social Security disability. He started this benefit in 1993. At the onset he received an undisclosed lump sum payment.
12) The parties for a period of time owned a condo in Florida. This was sold in March 1999 with net proceeds of $21,000.00. This money was deposited in the defendant's account and is not yet accounted for in this proceeding.
13) The defendant has on repeated occasions been the object of the benifence of his Aunt Ida Lamy[2]
14. The aunt has regularly paid the sum of $400.00 a week for her care by the parties.
15. In 1993 the defendant inherited at least $90,000.00 from his mother.
16. The defendant acquired a motorcycle in 1999.
17. His regular use of the motorcycle and his landscaping activities leads the court to believe the defendant has an earning capacity.
18. The defendant was in March 1999 the actual owner of People's Bank accounts in the amount of $103,000.29. (Plaintiff's Exhibit 17).
19. On October 19, 1999 he closed out the accounts by withdrawing CT Page 15975 $95,424.62. (Plaintiff's Exhibit 18).
20) On his financial affidavit filed at the time of trial, the defendant made a false statement by not revealing the receipt of $400.00 per week.
21) On his December 1999 financial affidavit, the defendant made a false statement by claiming that he was spending $400.00 per week on the expenses of Ms. Lamy, when in fact he was spending this money on his own needs.
22) The demeanor of the defendant is that of a deceptive person who believes he can "outsmart" anyone in manipulating money and his aunt's money.
23) It is patently evident that the major cause for the irreconcilable breakdown of this marriage is the conduct and misconduct of the defendant.
 Discussion
There was evidence that Mrs. Lamy made a significant gift to the parties in the approximate amount of $100,000.00, which money was deposited in the name of the defendant, Robert J. Anthony alone. There was also uncontroverted evidence that $200,000.00 of the other monies, held jointly by Ida Lamy, Robert J. Anthony, and others was transferred to the name of Robert J. Anthony alone. Subsequent to these transfers, the defendant, Robert J. Anthony and the defendant's Attorney Althea S. Dinan, were appointed as Co-Conservators for Mrs. Lamy. An accounting submitted to the Probate Court, signed by the defendant, Robert J. Anthony, and his Attorney Althea S. Dinan, as Co-Conservators, under oath listed Mrs. Lamy's assets. (Plaintiff's Exhibit 21). Said accounting did not include the aforementioned $200,000. The defendant, Robert J. Anthony testified that the accounting constituted all of "Ida's money". Mr. Anthony also testified under oath, in response to direct questions from the Court, that he put the money in his own name in order to keep the money away from his wife and in order to defraud the State of Connecticut.
There was not a single shred of evidence submitted to this Court in the trial of this matter that suggested that approximately $200,000 flowed into the defendant's name was anything other than money that he was legally entitled to transfer, use or spend and that he in fact did so. The money was held jointly, therefore, Mr. Anthony was legally entitled to withdraw it and put it into his own name solely and he did so. The plaintiff's substantially uncontroverted testimony was that approximately $100,000 of these funds was a gift to both parties. The defendant CT Page 15976 prepared an accounting of Mrs. Lamy's money and assets, under oath, failed to include any of the aforementioned sums and testified that his accounting included all of her assets. No subsequent account was ever submitted into evidence and there is no evidence whatsoever for the Court that those funds left the Estate of Mr. Robert J. Anthony. However, of course the asset has disappeared from his financial affidavit.
Even assuming arguendo that some sort of "accommodation" existed there is no basis of law or in fact, to assert that "Ida's money" should not be considered as an asset of the defendant.
There was not even a modicum of evidence to suggest that any Constructive Trust could be imposed on "Ida's money". A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. It is not a trust in which the trustee is to have duties of administration lasting for any appreciable period of time, but rather a passive, temporary trust in which the trustees sole duty is to transfer the title and possession to the beneficiary. There must be a duty owed or a special or confidential relationship in order to impost a constructive trust. Brown v. Brown,190 Conn. 345 (1983).
There is substantial authority which requires clear and convincing evidence of facts needed to establish any Constructive Trust. Starzec v.Kida, 183 Conn. 341 (1981). In this case, there was no evidence of any facts needed to establish any Constructive Trust. Therefore, one is compelled to conclude that from 1999, Mr. Anthony had approximately $200,000 that he could and did use and spend as he wished, and this inevitable conclusion is extremely relevant in the distribution of the assets in this matter.
The distribution of assets in a dissolution of marriage action is governed by Connecticut General Statutes § 46b-81, which provides in pertinent part: ". . . the Trial Court may assign to either the husband or the wife all or any part of the estate of the other. In fixing the nature and value of the property, the Court after hearing the witnesses of each party, shall consider the length of the marriage, the causes for the dissolution of the marriage, the age, health, state, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The Court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. This approach to property division is commonly referred to as an all-property equitable distribution scheme." LopianoCT Page 15977v. Lopiano, 247 Conn. 356 (1998).
In dissolution proceedings the Court must determine whether an asset was earned prior to or subsequent to the date of dissolution in order to determine whether or not it is subject to equitable distribution.Bornemann v. Bornemann, 245 Conn. 508 (1998). It is not disputed that all of the assets of this marriage, including any part of "Ida's money" were accumulated during the course of the marriage and are therefore all subject to equitable distribution.
Section 46b-81 does not define "property" nor does it identify the types of property interest that are subject to equitable distribution in dissolution proceedings. When a statute does not define a term, we look to the common understanding expressed in the law and in dictionaries. Black's Law Dictionary defines "property" as the term "commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises and incorporeal hereditaments."
The purpose of property division pursuant to dissolution proceedings is to unscramble existing marital property to give each spouse his or her equitable share at the time of dissolution. Smith v. Smith, 249 Conn. 265
(1999). The equitable distribution approach of property division doesnot limit, either by timing or method of acquisition or by source offunds, the property subject to the trial courts broad allocative power.Wendt v. Wendt, 59 Conn. 656 (2000). (Emphasis added). There are three stages of analysis regarding equitable distribution of each resource in a dissolution action:
(1) Whether resource is property to be equitably distributed;
(2) What is appropriate method for determining value of property;
(3) What is the most equitable distribution of property between parties. Lopriano, supra.
Given all the statutory criteria, all the facts and circumstances involved, and weighing all the testimony of the parties, taking their credibility into consideration, and all the exhibits and documentary evidence submitted, the only fair, reasonable and equitable way to divide the assets of this marriage is in accordance with the following orders.
 Orders
CT Page 15978
1) The Court has jurisdiction over the parties.
2) The Court has jurisdiction over the marriage.
3) The marriage is dissolved on grounds of irretrievable breakdown.
4) The net proceeds from the sale of 20 North Green Acres Lane, Trumbull shall be paid eighty-five (85%) per cent to the plaintiff and fifteen (15%) percent to the defendant.
5) The defendant/husband will pay up to $150.00 per month towards the cost of the plaintiff/wife's medical insurance, until she is eligible for Medicare. Said amount will be considered alimony.
6) The parties will equitably divide their furniture, furnishings and items of personal property that are currently in the marital home in Trumbull, Connecticut. The parties will cooperate with reference to any inventory of items in the home, and will attempt to negotiate any dispute with reference to distribution of personal property with the Family Relations Office of the Superior Court, before the matter is litigated.
7) The parties are joint owners, along with their daughter, Deborah, of a condominium in Boynton Beach, Florida. The defendant will quit claim all of his right, title and interest in said property in Florida to the plaintiff and the plaintiff will hold the defendant/husband harmless from any claim or demand thereon.
8) Each party will keep those motor vehicles, that are currently in his or her name, without any claim or demand by the other, and each will hold the other harmless regarding same.
9) The parties will divide their IRA's 55% to wife/45% to husband, and the defendant/husband will transfer to the plaintiff/wife a sum that will achieve this division.
10) The defendant/husband will continue to pay to the plaintiff/wife the sum of $250.00 per week as alimony until death of either party, or the plaintiff/wife's remarriage or cohabitation with an unrelated male for a period of longer than (60) consecutive days. Either party shall be entitled to earn up to $40,000 per year from employment before a motion to modify alimony on the basis of increased income shall lie.
11) The defendant/husband will transfer to the plaintiff/wife a sum equal to one-half (1/2) of the proceeds of sale of the jointly owned condominium in Boynton Beach, Florida within (60) days. CT Page 15979
12) Except as set forth above, each party shall keep those assets as appear on their respective financial affidavits without any claim or demand by the other, and the parties shall pay their respective liabilities as appear on their financial affidavits and hold the other harmless from any claim arising out of same.
13) The defendant/husband will contribute $4,000 to the plaintiff/wife's attorneys fees within (30) days.
The Court,
Daniel E. Brennan, Jr., Judge.